UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION (2)

WILLIAM JOHNSON, JILL JOHNSON,
BRIAN MASON, NAOMI MASON, and
SECOND AMENDMENT FOUNDATION,
INC.,                                            No. 17-CV-00124-DLM-TPG

      Plaintiffs,                          HON. PAUL L. MALONEY

v.                                               MAG. TIMOTHY P. GREELEY

NICK LYON, in his official capacity as           **DEFENDANT'S BRIEF IN**
Director of the Michigan Department of Health    **SUPPORT OF MOTION TO**
and Human Services,                              **DISMISS OR FOR SUMMARY**
                                                 **JUDGMENT**
      Defendant.
                                                 **ORAL ARGUMENT**
                                                 **REQUESTED**

_____

David G. Sigale
Attorney for Plaintiffs
Law Firm of David G. Sigale, P.C.
799 Rossevelt Road, Suite 207
Glen Ellyn, IL 60137
(630) 452-4547
dsigale@sigalelaw.com

_____

Joshua S. Smith (P63349)
Jennifer L. A. Walker (P73048)
Attorneys for Defendant
Michigan Department of Attorney General
Health, Education & Family Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 373-7700
smithj46@michigan.gov
walkerj32@michigan.gov

_____/

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO DISMISS OR FOR
SUMMARY JUDGMENT**

**ORAL ARGUMENT REQUESTED**

Joshua S. Smith
Jennifer L. A. Walker
Assistant Attorneys General
Attorneys for Defendant
Health, Education & Family
Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 373-7700
Smithj46@michigan.gov
Walkerj32@michigan.gov
P63349
P73048

Dated: September 29, 2017

# TABLE OF CONTENTS

Page

Table of Contents .................................................................................................... 1

Index of Authorities ............................................................................................... 3

Concise Statement of Issues Presented .................................................................. 8

Controlling or Most Appropriate Authority ........................................................... 8

Introduction .......................................................................................................... 1

Statement of Facts ................................................................................................. 3

Argument ............................................................................................................... 7

I.      This Court lacks jurisdiction because Plaintiffs lack standing and their
        claims are unripe. ....................................................................................... 7

        A.      The Johnsons and Masons lack standing to bring their claims. ........... 7

        B.      Plaintiff SAF lacks association standing. .......................................... 11

        C.      Plaintiffs lack standing to assert the rights of "foster and adoptive
                parents, and would-be foster and adoptive parents." .......................... 12

        D.      Plaintiffs' claims are not ripe for review. ......................................... 13

III.    Plaintiffs' claims are precluded under the *Burford* abstention doctrine. ....... 15

IV.     Plaintiffs fail to state a claim upon which relief may be granted. ................. 17

        A.      The plain language of R. 400.9415 protects Second Amendment rights.
                .................................................................................................... 17

        B.      Plaintiffs fail to state a claim under the Second Amendment. ............. 21

                1.      The regulation at issue does not impinge on core Second
                        Amendment rights. ............................................................... 23

                2.      To the extent the Rule impinges on the Second Amendment, it
                        satisfies the intermediate scrutiny test. ................................. 26

                        a.      The Department has a compelling governmental interest
                                in the safety of children and public safety. ..................... 26

        b.     There is a reasonable fit between R. 400.9415(3) and the Department's interest in the safety of children and public safety. .............................................................................. 27

C.     Plaintiffs fail to state a claim under the Fourteenth Amendment ....... 32

    1.    Section 1981 has no application to the present case. ................. 33

    2.    Plaintiffs' Equal Protection claim fails because the rule at issues satisfies the rational basis test. ................................................... 34

    3.    Plaintiffs fail to raise a right protected by substantive Due Process ....................................................................................... 36

Conclusion and Relief Requested ................................................................ 38

# INDEX OF AUTHORITIES

Page

## Cases

Adult Video Ass'n v. Dep't of Justice,
  71 F.3d 563 (6th Cir. 1995) ................................................................ 10

Airline Professionals Ass'n of Int'l Bhd. of Teamsters v. Airborne, Inc.,
  332 F.3d 983 (6th Cir. 2003) ................................................................ 16

Ali v. Advance Am. Cash Advance Centers, Inc.,
  110 F. Supp. 3d 754 (E.D. Mich. 2015) ............................................. 42

Ashcroft v. Iqbal,
  556 U.S. 662 (2009) ............................................................................ 22

Berger v. Supreme Court of Ohio,
  861 F.2d 719 (6th Cir. 1988) .............................................................. 26

Binno v. American Bar Assoc.,
  826 F.3d 338 (6th Cir. 2016) ................................................................ 9

Bonidy v. U.S. Postal Service,
  790 F.3d 1121 (10th Cir. 2015) ..................................................... 31, 33

Bowles v. Seminole Rock & Sand Co.,
  325 U.S. 410, 414 (1945) ............................................................... 23, 26

Burford v. Sun Oil,
  319 U.S. 315 (1943) ....................................................................... 19, 21

Burgess v. Lowery,
  201 F.3d 942 (7th Cir. 2000) .............................................................. 40

Chrysler Corp. v. Comm'r of Internal Revenue,
  436 F.3d 644 (6th Cir. 2006) .............................................................. 24

Clapper v. Amnesty Intern. USA,
  568 U.S. 398 (2013) ....................................................................... 12, 13

Clark v. Adams,
  No. CIV.A. 06-37-KSF, 2010 WL 598623 (E.D. Ky. Feb. 17, 2010) .................... 35

Coalition for Health Concern v. LWD Inc.,
  60 F.3d 1188 (6th Cir. 1995) .............................................................. 20

County of Sacramento v Lewis,
  523 US 833 (1998) .............................................................................. 42

Dale Baker Oldsmobile v. Fiat Motors of North America, Inc.,
  794 F.2d 213 (6th Cir. 1984) .............................................................. 26

Disc. Tobacco City & Lottery, Inc. v. U.S.,
  674 F.3d 509 (6th Cir. 2012) .............................................................. 27

Does v. Munoz,
  597 F.3d 961 (6th Cir. 2007) .............................................................. 45

Drummond v. Fulton Cty. Dep't Family and Children's Serv.,
  563 F.2d 1200 (5th Cir. 1977) ............................................................ 47

Fernanders v. Mich. Dep't of Military & Veterans Affairs,
  No. 12-11752, 2012 U.S. Dist. LEXIS 111872 at *7 (E.D. Mich. Aug. 9, 2012) .................... 22

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,
  528 U.S. 167 (2000) ............................................................................ 10

*Friends of Tims Ford v. Tenn. Valley Auth.*,
585 F.3d 955 (6th Cir. 2009) .................................................................. 14

*Hall v. Sweet*,
555 F. App'x 469 (6th Cir. 2016) ............................................... 35, 40, 41, 45

*Heitsch v. Kavanagh*,
200 F.2d 178 (6th Cir. 1952) .................................................................. 26

*Heller v. District of Columbia*,
554 U.S. 570 (2008) ...................................................................... passim

*Heller v. District of Columbia*,
670 F.3d 1244 (D.C. Circ. 2011) .......................................................... 29, 30

*In re Hicks*,
893 N.W.2d 637 (Mich. 2017) .................................................................. 5

*In re Rood*,
763 N.W.2d 587 (2009) ......................................................................... 5

*Jackson v. City and County of San Francisco*,
746 F.3d 953 (9th Cir. 2014) .................................................................. 34

*Jackson v. City of Columbus*,
194 F.3d 737 (6th Cir. 1999) ....................................................... 8, 37, 39, 44

*Jones v. Ada S. McKinley Cmty. Servs.*
No. 89 C 0319, 1989 WL 105231 (N.D. Ill. Sept. 1, 1989) ............................... 43

*Kaminski v. Coulter*,
865 F.3d 339 (6th Cir. 2016) ................................................................... 8

*Knox Co. Educ. Ass'n v. Knox Co. Bd. Of Educ.*,
158 F.3d 361 (6th Cir. 1998) ............................................................. 32, 40

*Kowalski v. Tesmer*,
543 U.S. 125 (2004) ............................................................................ 16

*Kyees v. Cty. Dep't of Public Welfare of Tippecanoe Cty.*,
600 F.2dc 693 (9th Cir. 1979) ................................................................. 47

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ..................................................... 10, 11, 12, 15

*Lyons v. City of Los Angeles*,
461 U.S. 95 (1983) .............................................................................. 13

*McDonald v. City of Chicago*,
561 U.S. 742 (2010) ........................................................................ 28, 29

*Mwasaru v. Napolitano*,
619 F.3d 545 (6th Cir. 2010) .................................................................. 24

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*,
538 U.S. 803 (2003) ............................................................................. 17

*Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*,
700 F.3d 185 (5th Cir. 2012) ............................................................. passim

*Neinast v. Bd. of Trs. of Columbus Metro. Library*,
346 F.3d 585 (6th Cir. 2003) ............................................................. 30, 36

*Parker v. Metro. Life Ins. Co.*,
121 F.3d 1006 (6th Cir. 1997) ................................................................. 23

*Renfro v. Cuyahoga County Department of Human Services*,
884 F.2d 943, 944 (6th Cir. 1989) ...................................................... 40, 47

*Romer v. Evans,*
517 U.S. 620 (1996)............................................................................ 43

*Runyon v. McCrary,*
427 U.S. 160 (1976)............................................................................ 42

*Saginaw Housing Comm'n v. Bannum,*
576 F.3d 620 (6th Cir. 2009) ............................................................ 19

*Santosky v. Kramer,*
455 U.S. 745 (1982).............................................................................. 5

*Schlesinger v. Reservists Comm. to Stop the War,*
418 U.S. 208 (1974)............................................................................ 11

*Sherrard v. Owens,*
484 F. Supp. 728 (W.D. Mich. 1980) ................................................ 46

*Sherrard v. Owens,*
644 F.2d 542 (6th Cir. 1981) ............................................................ 46

*Smith v. Org. of Foster Families for Equality and Reform,*
431 U.S. 816 (1977)..................................................................... 39, 46

*St. Francis College v. Al–Khazraji,*
481 U.S. 604 (1987)............................................................................ 42

*Summers v. Earth Island Inst.,*
555 U.S. 488 (2009)............................................................................ 11

*Swierkiewicz v. Sorema N. A.,*
534 U.S. 506 (2002).............................................................................. 8

*Tesoro Hawaii Corp. v. United States,*
405 F.3d 1339 (Fed. Cir. 2005)................................................... 23, 26

*Thomas More Law Ctr. v. Obama,*
651 F.3d 529 (6th Cir. 2011) ............................................................ 17

*Tikkanen v. Liberty Life Assur. Co. of Boston,*
31 F. Supp. 3d 913 (E.D. Mich. 2014)............................................... 24

*Turner v. Snyder,*
No. 12-1095 (W.D. Mich. 2103)......................................................... 21

*Tyler v. Hillsdale County Sheriff's Dep't,*
837 F.3d 678 (6th Cir. 2016) ......................................... 29, 34, 36, 44

*U.S. v. Chapman,*
666 F.3d 220 (4th Cir. 2012) ......................................... 35, 37, 39, 45

*U.S. v. Chester,*
514 F. App'x 393 (4th Cir. 2013) ...................................................... 14

*U.S. v. Decastro,*
682 F.3d 160 (2d Cir. 2012)............................................................... 11

*U.S. v. Greeno,*
679 F.3d 510 (6th Cir. 2012) ...................................................... 29, 33

*U.S. v. Hayes,*
515 U.S. 737 (1995)..................................................................... 10, 12

*U.S. v. Mahin,*
668 F.3d 119 (4th Cir. 2012) ......................................... 35, 37, 39, 45

*U.S. v. Marzzarella,*
614 F.3d 85 (3d Cir. 2010)........................................... 30, 31, 33

*U.S. v. Masciandaro*,
  638 F.3d 458 (4th Cir. 2011) ................................................................. 14

*Warshak v. United States*,
  532 F.3d 521 (6th Cir. 2008) ................................................................. 17

*Warth v. Seldin*,
  422 U.S. 490 (1975).............................................................................. 16

*Waskul v. Washtenaw County Cmty. Mental Health*,
  221 F. Supp. 2d 913 (E.D. Mich. 2016)............................................ 14, 15

*Weinberger v. Salfi*,
  422 U.S. 749 (1975).............................................................................. 36

*Whelan v. United States*,
  529 F.2d 1000 (Ct. Cl. 1976) ........................................................... 24, 26

*White v. U.S.*,
  601 F.3d 545 (6th Cir. 2010) ................................................................. 13

*Whitmore v. Arkansas*,
  495 U.S. 149 (1990).............................................................................. 10

*Wildauer v. Frederick Cty.*,
  993 F.2d 369 (4th Cir. 1993); ................................................................ 47

*Zadvydas v. Davis*,
  533 U.S. 678 (2001).............................................................................. 27

## Statutes

18 U.S.C. § 922(k) ..................................................................................... 25
42 U.S.C. § 1981 ........................................................................... 2, 33, 34
Mich. Comp. Laws § 24.301................................................................. 16, 17
Mich. Comp. Laws § 28.422....................................................... 20, 21, 27, 29
Mich. Comp. Laws § 28.422a...................................................... 20, 21, 27, 29
Mich. Comp. Laws § 712A.13a(1)(e)........................................................ 5, 33
Mich. Comp. Laws § 712A.13a(9) .............................................................. 4
Mich. Comp. Laws § 712A.18f(3)(b) ........................................................... 4
Mich. Comp. Laws § 719A.19a(2) .............................................................. 4
Mich. Comp. Laws § 719A.19a(3) .............................................................. 4
Mich. Comp. Laws § 722.111.................................................................... 17
Mich. Comp. Laws § 722.111(1)(a)............................................................ 26
Mich. Comp. Laws § 722.111(1)(c)............................................................. 5
Mich. Comp. Laws § 722.112.................................................................... 17
Mich. Comp. Laws § 722.121................................................................ 16, 17
Mich. Comp. Laws § 722.122................................................................ 16, 17
Mich. Comp. Laws § 722.122(1) ............................................................. 5, 22
Mich. Comp. Laws § 722.953(3) ................................................................. 5
Mich. Comp. Laws § 722.953(b) ............................................................... 22
Mich. Comp. Laws § 722.954(1) ................................................................. 5
Mich. Comp. Laws § 722.958(1) ............................................................... 22

## Other Authorities

*A Well-Regulated Right: The Early American Origins of Gun Control*, 73 Fordham L. Rev. 487
  (2004).................................................................................................. 25

**Regulations**

Mich. Admin. Code R. 400.12416 ................................................................................. 26

Mich. Admin. Code R. 400.9414 ................................................................................... 26

Mich. Admin. Code R. 400.9415 ............................................................................... passim

Mich. Admin. Code R. 400.9415(3) ........................................................................... passim

Mich. Admin. Code R. 400.9415(3) § (a) ...................................................................... 20

Mich. Admin. Code R. 400.9415(3) § (b) ...................................................................... 20

Mich. Admin. Code R. 400.9415(3) § (c) ...................................................................... 20

Mich. Admin. Code R. 400.9415(d) .............................................................................. 20

**Constitutional Provisions**

U.S. Const., art. III, § 2 ................................................................................................. 8

## CONCISE STATEMENT OF ISSUES PRESENTED

1. This Court lacks jurisdiction because Plaintiffs lack standing and their claims are unripe

2. Plaintiffs' claims are precluded under the *Burford* abstention doctrine.

3. Plaintiffs fail to state a claim upon which relief may be granted because the rule at issue does not impinge on their Second Amendment rights and they assert no actionable Fourteenth Amendment claims.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

<u>Authority</u>:    *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 189 (2000); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992); *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 410-11, 414 (2013); *Burford v. Sun Oil*, 319 U.S. 315, 317-18 (1943); *Tyler v. Hillsdale County Sheriff's Dep't*, 837 F.3d 678, 685 (6th Cir. 2016); *Sherard v Owens,* 644 F.2d. 542 (6th Cir. 1981).

**INTRODUCTION**

Plaintiffs William Johnson, Jill Johnson, Brian Mason, Naomi Mason, and Second Amendment Foundation, Inc. claim that a foster care licensing rule, Mich. Admin. Code R. 400.9415, violates their Second Amendment right to bear arms and their Fourteenth Amendment rights to Equal Protection and substantive Due Process, despite the fact that none of the Plaintiffs are licensed foster parents or have had any adverse action taken based on R. 400.9415.

Plaintiffs have not shown an injury that is concrete and particularized, or even actual or imminent.  Indeed, they have shown no cognizable injury because they fail to show that they were either denied a license or that an existing license was terminated based on a violation of R. 400.9415.  In fact, the Masons have not even applied for a license, and while the Johnsons began the licensing process to care for their grandson, the child has since been returned to his mother, and the Johnsons have no interest in fostering any other children.  Plaintiffs have not alleged *any* adverse action by the Defendant Nick Lyon, Director of the Department of Health and Human Services.  Instead, Plaintiffs' claims are based on speculation. Accordingly, Plaintiffs lack standing and their claims are unripe for this Court's review.  This Court should not issue an advisory opinion.

Neither Plaintiffs nor any other citizen has a legal right to be licensed as a foster parent.  A foster parent voluntarily enters into a relationship with the State under State law and through contract.  In such a relationship, individuals may be required to curtail certain rights they may otherwise have if they did not voluntarily agree to becoming a foster parent.

Moreover, nothing in the text of Rule 400.9415 bars licensed foster parents from bearing arms to defend the home.  Nor does the rule bar licensed foster parents from using guns for any other legal purpose, such as hunting or target practice, or carrying a firearm in or outside of the home.  Rather, by its own plain language, the rule merely requires that, when not in use, firearms and ammunition must be safely stored in a foster family home.  And, for licensed foster parents owning a handgun, they must be able to show their compliance with Michigan's registration requirements.  None of these reasonable safety requirements for the protection of children in foster care infringes on the Second Amendment.

Even if Rule 400.9415 did somehow impinge on core Second Amendment protections, it survives the applicable intermediate scrutiny test.  First, the Department's objective of protecting the health and safety of children in Michigan's foster care system is significant, substantial, and important.  Second, there is a reasonable fit between the challenged regulation and that important objective.

Plaintiffs' Fourteenth Amendment and 42 U.S.C. § 1981 claims are based solely on their status as foster and adoptive parents, and as would-be foster and adoptive parents.  Section 1981 only applies to alleged discrimination on the basis of race, alienage, ancestry or ethnic characteristics, none of which are at issue here. This Court should dismiss Plaintiffs' claims for lack of jurisdiction because Plaintiffs lack standing and their claims are unripe.

Rule 400.9415(3) survives rational basis review because it is reasonably related to the legitimate governmental purpose of preventing foster children from

encountering unsecured firearms and ammunition. It therefore does not violate Plaintiffs' Equal Protection rights. And because the foster relationship is not protected by Due Process concerns, Plaintiffs' substantive Due Process claims should be dismissed.

## STATEMENT OF FACTS

**Michigan's foster care system.**

The present case concerns Michigan's foster care system, which is operated in large part by the Department of Health and Human Services (Department). The Department, led by Defendant Director Nick Lyon, plays a critical role in operating Michigan's foster care system, which provides care for nearly 13,000 children, about 300 of whom are available for adoption.[1] The foster care system provides temporary care and custody to children upon a court's finding that all of the following factors are present:

> (a) Custody of the child with the parent presents a substantial risk of harm to the child's life, physical health, or mental well-being.
> (b) No provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from risk as described in subdivision (a).
> (c) Continuing the child's residence in the home is contrary to the child's welfare.
> (d) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.
> (e) Conditions of child custody away from the parent are adequate to safeguard the child's health and welfare.

Mich. Comp. Laws § 712A.13a(9).

---

[1] http://www.michigan.gov/mdhhs/0,5885,7-339-73971_7117---,00.html. Last accessed September 27, 2017.

3

The first priority of the foster care system is to reunify the foster child with his or her legal parents. Mich. Comp. Laws §§ 719A.19a (2) and (3). *See also* Mich. Comp. Laws §§ 712A.18f(3)(b), (c) and (d); *In re Hicks*, 893 N.W.2d 637, 639-40 (Mich. 2017). Importantly, the rights of natural parents are not abrogated "simply because they have . . . lost temporary custody to the State." *Santosky v. Kramer*, 455 U.S. 745, 753-754 (1982); *In re Rood*, 763 N.W.2d 587, 597 (2009).

The Department oversees the foster care system, which is composed of the court system, case workers, families and child-placing agencies. Foster care can be provided by licensed foster family homes, group homes, or child-caring institutions. Mich. Comp. Laws § 712A.13a(1)(e). In addition, foster care can be provided by an unlicensed relative pursuant to a court order. *Id*.

One of the many important tasks undertaken by child-placing agencies is to license foster care providers. Mich. Comp. Laws § 722.954(1). Child-placing agencies include both governmental and non-governmental organizations. *Id*. Child-placing agencies work with foster care providers, providing supervision and assistance. Mich. Comp. Laws § 722.111(1)(c). Child-placing agencies must inform foster care providers of "the temporary nature of foster care and the ultimate goal of returning the child" to his or her legal parents or, if necessary, prepare the child for adoption. *Id*.

The Department "is responsible for the development of rules for the care and protection of children in [child care] organizations." Mich. Comp. Laws § 722.122(1). Thus, child safety is paramount. Similarly, the purpose of the Foster

Care and Adoption Services Act includes "the well-being and safety of all children who receive foster care." Mich. Comp. Laws § 722.953(3). Plaintiffs challenge one such safety rule, Mich. Admin. Code R. 400.9415, which states:

(1) A foster parent shall follow the agency's hazardous materials policy.

(2) Dangerous and hazardous materials, objects, weapons, chemicals, medication, or equipment that may present a risk to children placed in the foster home shall be stored securely and out of the reach of children, as appropriate for the age and functioning level of the children.

(3) Firearms are subject to the following conditions:

(a) Stored in a locked metal or solid wood gun safe or

(b) Trigger-locked and stored without ammunition in a locked area.

(c) Ammunition shall be stored in a separate locked location.

(d) A handgun shall be registered. Documentation of the registration of the handgun shall be available for review.

Only § (3) pertains to firearms.

Recently, two bills were introduced in the Michigan Legislature: Senate Bill 527 and House Bill 4955. (SB 527, Ex. 16; HB 4955, Ex. 17.) SB 527 would allow foster parents to possess firearms in a foster home. (Ex. 16.) And HB 4955 would prohibit the Department from considering an individual's firearm possession in placing a child in foster care or as an adoptee. (Ex. 17.)

**Background**

On March 28, 2017, five-year-old O.D. was removed from his home and placed into protective custody. (Order to Take Child into Prot. Cust., Ex. 2.)[2] Because the child was removed, the Department filed a petition alleging that O.D.'s mother, A.D., suffered from ongoing mental health issues and was homeless, and O.D.'s father was unable to care for O.D. (Petition, Ex. 3.) The court authorized the petition and placed O.D. with the Department for care and supervision. (Order After Prelim. Hrg., Ex.4.) On May 24, 2017, A.D. pleaded no contest to the petition and the court took jurisdiction of O.D., finding statutory grounds under Mich. Comp. Laws § 712A.2(b). (Order of Adjud., Ex. 5.)

O.D. was placed with his grandparents, Plaintiffs William and Jill Johnson, almost immediately upon removal from his mother. (July 25, 2017, Ltr. to Judge Massie, Ex. 6.) This type of placement is called relative placement and does not require the caregivers to be licensed. (DHHS Children's Foster Care Manual, FOM 722-03B, p. 11, Ex. 7.) Although not required by law as a relative placement, the Johnsons filled out a Preliminary Foster Home Information Sheet and initiated their Foster Care Application on June 2, 2017. (Prelim. Foster Home Packet, Ex. 8; Children's Foster Home Lic. App., Ex. 9.) The Department referred the foster home

---

[2] "Courts may consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies." *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), abrogated on other grounds, *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002). Similarly, courts may consider exhibits attached to the pleadings that are central to the claims without converting the motion to one for summary judgment. *Kaminski v. Coulter*, 865 F.3d 339, 344 (6th Cir. 2016).

application to a third-party child-placement agency called U.P. Kids.  (Ex. 6; Ex. 9., p. 1)

Despite initiating an application for a foster care license in June, the Johnsons have yet to complete the application process.  And, after a dispositional review hearing, the court ordered O.D. to be returned to his mother on August 1, 2017.  (Order Following Dispositional Review, Ex. 10.)  Therefore, O.D. is no longer placed with the Johnsons, and the Johnsons have no interest in fostering other children:  on the Preliminary Foster Home Packet, the Johnsons note that they "honestly do NOT want to be foster parents, [they] just want to take care of family [in] Gogebic County [but] DHHS says this is the only way to do it[.]"  (Ex. 8, p. 5.) Notably, the Masons have not initiated any application for a foster care license.

## ARGUMENT

### I.    This Court lacks jurisdiction because Plaintiffs lack standing and their claims are unripe.

#### A.    The Johnsons and Masons lack standing to bring their claims.

Article III of the U.S. Constitution limits the federal courts to adjudicating actual "cases or controversies."  U.S. Const., art. III, § 2.  Accordingly, standing is a threshold requirement for invoking federal-court jurisdiction.  *Binno v. American Bar Assoc.*, 826 F.3d 338, 344 (6th Cir. 2016).  A plaintiff's personal interest in the litigation must exist both at the commencement of the suit and throughout the suit. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 189 (2000). For standing to exist, a plaintiff must show:  (1) a "concrete, particularized, and

actual or imminent" injury; (2) that is "fairly traceable" to the defendant's alleged conduct; and (3) which the court could redress by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992).

The injury necessary to invoke constitutional standing must be concrete and palpable, not merely abstract or hypothetical. *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990); *Adult Video Ass'n v. Dep't of Justice*, 71 F.3d 563, 567 (6th Cir. 1995). Generalized grievances "against allegedly illegal governmental conduct" are insufficient. *U.S. v. Hayes*, 515 U.S. 737, 743 (1995). Instead, there must be a "real need to exercise the power of judicial review in order to protect the interests of the complaining party." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 221 (1974). Otherwise, allowing courts to oversee legislative or executive action "would significantly alter the allocation of power . . . away from a democratic form of government[.]" *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

Plaintiffs have not shown an injury that is concrete and particularized, or even actual or imminent. *Lujan*, 504 U.S. at 560–561. Plaintiffs complain that a foster family home licensing rule, Mich. Admin. Code R. 400.9415, infringes on their rights under the Second and Fourteenth Amendments. In order to have a cognizable injury, Plaintiffs would have to show that they were either denied a license or that an existing license was terminated based on a violation of R. 400.9415. Plaintiffs, however, fail to even allege that they have applied for a foster license, which is fatal to their claim. *U.S. v. Decastro*, 682 F.3d 160, 164 (2d Cir.

2012).  They have certainly not alleged that the Department denied an application or terminated an existing license based on the application of R. 400.9415.

Notwithstanding their failure to plead it, the Johnsons are working with U.P. Kids to complete a foster license application, although the process appears to be incomplete.  And now that O.D. has returned home to his mother, and the Johnsons have no interest in fostering children other than O.D., who no longer requires such services, the Johnsons have suffered no injury.  It is uncontested that, as of the filing date of this Motion and Brief, the Masons have not applied for a license and that the Second Amendment Foundation (SAF) is an organization and thus incapable of holding or applying for a license.

Under these circumstances, Plaintiffs have failed to allege a basis for a hypothetical injury, let alone one that is "actual or imminent."  Instead, Plaintiffs appear to make a generalized grievance against the mere existence of R. 400.9415, which is insufficient.  *Hayes*, 515 U.S. at 743.  Otherwise, their claims are based on a tenuous chain of speculation – *if* an application is denied based on R. 400.9415, *if* a license is granted but later terminated based on the rule, and so forth – that does not suffice to establish standing.  *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 410-11, 414 (2013).

The second and third elements of standing, that the injury must be "fairly traceable" to the defendant's alleged conduct and be redressable by a favorable decision, *Lujan*, 504 U.S. 560-61, are necessarily premised on the existence of an "actual or imminent injury."  Because Plaintiffs fail to allege an "actual or

imminent" injury, it logically follows that they cannot establish traceability or redressability.

Furthermore, the initial review of the Johnson's foster license application will be completed by third-party U.P. Kids, not the Department.  (Ex. 6, Ex. 9, p. 1.)  Thus, Plaintiffs' claim is premised on the possible decisions of a third-party.  But "guesswork as to how independent decisionmakers will exercise their judgment" cannot confer standing.  *Clapper*, 568 U.S. at 413.

Not only do Plaintiffs speculate that the Department *could* deny a foster license application, they further speculate that *if* the license is granted, it *could* be terminated in the future.  But "fears of hypothetical future harm" do not suffice to confer standing.  *Clapper*, 568 U.S. at 416-417; *White v. U.S.*, 601 F.3d 545, 554 (6th Cir. 2010).  This holds true even where the threatened harm occurred in the past.  *Lyons v. City of Los Angeles*, 461 U.S. 95, 105-08 (1983).  The claim is simply too tenuous to establish standing.  *Id.*

Similarly, Plaintiffs cannot establish standing by claiming a "chilling" effect – that the existence of the rule chills their ability to submit an application.  *Clapper*, 568 U.S. at 419; *White*, 601 F.3d at 554.  Nor can they rely on the contention that, absent this Court conferring standing on them, that "no one would have standing."  *Clapper*, 568 U.S. at 420.  Rather, Plaintiffs' failure to establish an "actual or imminent" injury is fatal to their claims.

Nor can Plaintiffs allege standing based on a facial or an as-applied challenge.  Rather, the effect of the challenged regulation on the named plaintiffs is

paramount because "no circuit has accepted an overbreadth challenge in the Second Amendment context." *U.S. v. Chester*, 514 F. App'x 393, 395 (4th Cir. 2013), Ex. 11 (citing *U.S. v. Masciandaro*, 638 F.3d 458, 474 (4th Cir. 2011)). Courts similarly reject facial challenges to statutes based on the Second Amendment. *Id.*

**B.     Plaintiff SAF lacks association standing.**

Plaintiff SAF must also establish the *Lujan* elements. *Waskul v. Washtenaw County Cmty. Mental Health*, 221 F. Supp. 2d 913, 918-19 (E.D. Mich. 2016). In addition, associations must also show that (1) their members would have standing as individuals, (2) the interests they seek to protect are relevant to the organization's purpose, and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the law suit." *Friends of Tims Ford v. Tenn. Valley Auth.*, 585 F.3d 955, 966 (6th Cir. 2009).

SAF fails to meet these tests. In the first place, it fails to satisfy *Lujan* because it has suffered no "concrete harm." *Waskul*, 221 F. Supp. 2d at 919. Indeed, SAF itself cannot apply for or receive a foster license; it cannot serve as a foster parent; it cannot exercise the individual right to bear arms. It thus fails to establish standing.

Plaintiff SAF's harm, if any, derives from the harm the named individuals can establish. But its general interest in advocacy regarding firearms does not mean that its individual members are vested with standing to pursue this litigation. As shown above, because none of the named individual Plaintiffs has standing, none of them can confer standing on SAF.

And even if SAF's organizational purpose is vague enough to meet the second criterion – in that advocacy on firearms issues may be relevant to this complaint – it fails to meet the third criterion. As shown above, SAF cannot apply for or receive a foster license, serve as a foster parent or exercise the individual right to bear arms. Its asserted claims therefore require individual group members to anchor them. Because SAF's representative members cannot establish standing, the group itself lacks standing.

### C.  Plaintiffs lack standing to assert the rights of "foster and adoptive parents, and would-be foster and adoptive parents."

Plaintiffs claim that the rule at issue violates the rights of "foster and adoptive parents, and would-be foster and adoptive parents," and Plaintiffs further claim that they have standing to assert Second Amendment claims on their behalf. (Doc. 1, Cplt., ¶¶ 28, 30 and 32, Pg. ID 8-9.) But none of the named Plaintiffs are, even under the most speculative theory, foster or adoptive parents. Thus, they cannot assert the alleged rights of other individuals. *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004); *Warth v. Seldin*, 422 U.S. 490, 499-502 (1975). As pointed out by Justice Thomas, in concurrence, "[i]t is doubtful whether a party who has no constitutional right at stake in a case should ever be allowed to litigate the constitutional rights of others." *Kowalski*, 543 U.S. at 135 (Thomas, J., conc.).

Nor do Plaintiffs have standing to assert the rights of "would-be" foster or adoptive parents because they have suffered no "actual or imminent" injury. Moreover, once the adoption process has been completed, the legal parent has the

same rights as any other parent in Michigan; the foster care licensing rules would not apply and thus adoptive parents could assert no injury resulting from them.

### D.    Plaintiffs' claims are not ripe for review.

Ripeness, although a distinct doctrine, is closely related to standing; both are based on Article III, but ripeness includes prudential concerns over adjudicating disputes premised on hypothetical future events. *Airline Professionals Ass'n of Int'l Bhd. of Teamsters v. Airborne, Inc.*, 332 F.3d 983, 987-88 (6th Cir. 2003). Courts will not address issues that are "not actual but merely threatened" because they are unripe for review. *Id.* at 988.

A case or controversy under Article III of the Constitution must exist to warrant review by the Court. *Thomas More Law Ctr. v. Obama*, 651 F.3d 529, 535 (6th Cir. 2011), abrogated in part on other grounds. Ripeness is designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way[.]" *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807 (2003).

The Sixth Circuit has adopted a two-part test to determine whether a claim is ripe for judicial review:

(1) [I]s the claim fit for judicial decision in the sense that it arises in a concrete factual context and concerns a dispute that is likely to come to pass? And

13

(2) [W]hat is the hardship to the parties of withholding court consideration?

*Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008).

In this case, Plaintiffs cannot establish that their claimed injury is imminent, let alone that Defendant's actions will create a hardship for them if this Court does not consider its lawsuit. In the first case, the Johnsons have not yet completed the foster care licensing process; if their application is approved, they lack standing. In the second place, the Masons are unable to even show a speculative claim because they have never applied for a foster license.

The Johnsons do not allege that their foster license application has been denied. Nor have they alleged that an existing license was terminated. Instead, they raise the specter that it is possible, at some unknown future juncture, that if they become licensed or their application for a foster license is rejected, it will be on grounds of R. 400.9415 and, as such, will violate what they believe to be their Second and Fourteenth Amendment rights. Such a speculative claim is wholly insufficient for this Court to invoke jurisdiction.[3]

Further, there is no hardship to Plaintiffs if the Court withholds consideration. The Johnsons can complete their application and await a decision; the Masons can, if they wish, apply for a foster license. If their foster license

---

[3] The Eastern District of Michigan recently dismissed a case on ripeness grounds where the plaintiffs alleged that threatened enforcement of the Adult Foster Care Licensing Act, Mich. Comp. Laws § 400.701, *et seq.*, would violate their constitutional and statutory rights. *Enhance, Inc. v. Snyder*, No. 16-11854, slip op. at 2-4 (E.D. Mich. June 13, 2017), Ex. 12. The Court held that, because the defendant had taken no adverse action, the claim was unripe. *Id.* at 8-12.

application is denied, they have the right to contest the decision via an administrative hearing. Mich. Comp. Laws §§ 24.301, 722.121 and 722.122. As it stands, however, it is premature for this Court to adjudicate Plaintiffs' claims that are unripe because there has been no formal decision by Defendants.

### III. Plaintiffs' claims are precluded under the *Burford* abstention doctrine.

The *Burford* abstention doctrine requires a federal court to abstain from exercising jurisdiction over issues of state domestic policy. *Burford v. Sun Oil*, 319 U.S. 315, 317-18 (1943). When a state agency is involved in a particular issue, a court should consider whether the *Burford* abstention applies. *Saginaw Housing Comm'n v. Bannum*, 576 F.3d 620, 626 (6th Cir. 2009). Under the *Burford* abstention, a federal court should decline to exercise jurisdiction in the following situations:

> (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or

> (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*Coalition for Health Concern v. LWD Inc.*, 60 F.3d 1188, 1194 (6th Cir. 1995), internal citations omitted.

A state agency, the Department, is obviously involved in the underlying matter, which gave rise to this case. And Plaintiffs' Complaint raises policy interpretation issues concerning an act regulated by Defendant to ensure the health, safety, and welfare of vulnerable children in Michigan's system of foster

care. Mich. Comp. Laws § 722.111, *et seq.*[4] If Plaintiffs applied for and were denied a license, they would have the right to contest that decision in an administrative proceeding and, if necessary, a state circuit court. Mich. Comp. Laws §§ 24.301, 722.121 and 722.122.

In addition, the Michigan Legislature recently introduced two bills – SB 527 and HB 4955 –that, if passed, would affect the foster care licensing rules regarding firearms. SB 527 would allow foster parents to possess firearms in a foster home. (Ex. 16.) And HB 4955 would prohibit the Department from considering an individual's firearm possession in placement of a child in foster care or of an adoptee. (Ex. 17.) To the extent the Legislature passes either of these bills, they could directly affect R. 400.9415(3) and thus this case. Accordingly, this Court could hold this matter in abeyance pending the outcome of the legislative process.

Clearly, at both the administrative and legislative levels, Michigan demonstrates a deep involvement in the policy questions at issue. Accordingly, this Court should abstain from exercising jurisdiction in this matter or, alternatively, hold it in abeyance pending the outcome of the legislative process.[5]

---

[4] The rule at issue, Mich. Admin. Code R. 400.9415(3) was promulgated pursuant to Mich. Comp. Laws § 722.112.

[5] This Court similarly held a case in abeyance pending the outcome of a related state-court suit. *Turner v. Snyder*, No. 12-1095 (W.D. Mich. 2103), pp. 4-7, 10, Ex. 20. Although this Court applied a different abstention doctrine, the same action would be appropriate under *Burford* abstention in the present case.

**IV.    Plaintiffs fail to state a claim upon which relief may be granted.**

Plaintiffs claim relief under three legal theories:  the Second Amendment (Count I); the Equal Protection Clause of the Fourteenth Amendment (Count II); and the Due Process Clause of the Fourteenth Amendment (Count III).  As demonstrated below, none of the counts states a claim upon which relief may be granted.

**A.    The plain language of R. 400.9415 protects Second Amendment rights.**

Because this case involves the interpretation of an administrative rule, the analysis must begin with the text of the rule,[6] which states:

> (1)    A foster parent shall follow the agency's hazardous materials policy.
>
> (2)    Dangerous and hazardous materials, objects, weapons, chemicals, medication, or equipment that may present a risk to children placed in the foster home shall be stored securely and out of the reach of children, as appropriate for the age and functioning level of the children.
>
> (3)    Firearms are subject to the following conditions:
>
> > (a)    Stored in a locked metal or solid wood gun safe or
> >
> > (b)    Trigger-locked and stored without ammunition in a locked area.

---

[6] Plaintiffs complain of "all other Michigan statutory language" without actually naming *any* Michigan statutory language that allegedly runs afoul of their rights. (Doc. 1, Cplt., ¶¶ 28, 30 and 32, Pg. ID 8-9, 11-12.)  This fails to satisfy even the most minimal of pleading requirements, and such amorphous allegations must be dismissed.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678-679 (2009); *Fernanders v. Mich. Dep't of Military & Veterans Affairs*, No. 12-11752, 2012 U.S. Dist. LEXIS 111872 at *7 (E.D. Mich. Aug. 9, 2012), Ex. 1.

(c) Ammunition shall be stored in a separate locked location.

(d) A handgun shall be registered.  Documentation of the registration of the handgun shall be available for review.

Mich. Admin. Code R. 400.9415.  Only § (3) pertains to firearms.[7]

It is well-established that the same rules for statutory interpretation apply to the interpretation of administrative regulations.  *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945); *Tesoro Hawaii Corp. v. United States*, 405 F.3d 1339, 1346-47 (Fed. Cir. 2005); *Whelan v. United States*, 529 F.2d 1000, 1002-03 (Ct. Cl. 1976).  The starting point for the review of any statute is its plain language. *Chrysler Corp. v. Comm'r of Internal Revenue*, 436 F.3d 644, 654-55 (6th Cir. 2006).  This rule also applies to the interpretation of state-level administrative rules. *Tikkanen v. Liberty Life Assur. Co. of Boston*, 31 F. Supp. 3d 913, 921 (E.D. Mich. 2014).  Where the language is unambiguous, the statute is applied as written and

---

[7] Although Plaintiffs appear to challenge the entirety of R. 400.9415, the nature of their challenge to §§ (1) and (2), which expressly pertains solely to the "hazardous materials" rules of third-party licensing agencies and to "Dangerous and hazardous materials, objects, weapons, chemicals, medication, or equipment," is unclear.  The sections unambiguously separate "weapons" and "firearms," clearly indicating that only § (3) concerns the latter.  Even if there were an ambiguity, the language of the entire rule indicates that regulations regarding "firearms" are contained solely in § (3) and treated separately from other "weapons."  *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1014 (6th Cir. 1997) (applying *noscitur a sociis* to interpret statutory terms based on the surrounding statutory language).  There appears to be no Second or Fourteenth Amendment right that would apply to §§ (1) and (2), and Plaintiffs articulate no such rights.  In addition, the counts and claims for relief are focused solely on firearms.  (Doc. 1, Cplt., ¶¶ 28, 30, 32, 34 and 37, Pg. ID 8-10.)  Thus, it would appear that Plaintiffs' inclusion of §§ (1) and (2) of R. 400.9415 is simply an instance of imprecise pleading.

no further construction is necessary or even permitted. *Mwasaru v. Napolitano*, 619 F.3d 545, 549 (6th Cir. 2010); *Chrysler Corp.*, 436 F.3d at 654.

A review of the language of R. 400.9415(3) shows that §§ (a), (b) and (c) refer solely to safe storage of firearms or ammunition. Each of these subsections uses the term "store." Section (a) requires firearms to be "[s]tored in a locked metal or solid wood gun safe." Alternatively, under § (b), firearms may be stored outside of a safe, so long as they have trigger locks and are not loaded. Thus, the rule allows licensed foster parents to use different methods of safe firearm storage.

Section (c) requires ammunition to be stored in a separate, locked location. This could, of course, be in the same locked safe as the firearm, so long as the ammunition is in a separate locked compartment.

Finally, handguns must be registered. R. 400.9415(d). This comports with the requirements of Michigan law. Mich. Comp. Laws §§ 28.422; 28.422a. A licensed foster parent must have registration documentation available for review. R. 400.9415(d). This section requires no particular form of documentation, but rather merely requires a licensed foster parent to provide proof that he or she registered his or her handgun as required by Michigan law.

Notably, nothing in this rule bars licensed foster parents from bearing arms to defend the home. Nor does the rule bar licensed foster parents from using guns for any other legal purpose, such as hunting or target practice, or carrying a firearm in or outside of the home. Rather, by its own plain language, the rule merely requires that, when not in use, firearms must be safely stored in a foster family

home.  And, for licensed foster parents owning a handgun, they must be able to show their compliance with Michigan's registration requirements.  Mich. Comp. Laws §§ 28.422; 28.422a.

None of these reasonable requirements infringes on the Second Amendment.

Buttressing this analysis, statutes are presumed constitutional.  *Berger v. Supreme Court of Ohio*, 861 F.2d 719 (6th Cir. 1988), Ex. 13 (citing *Dale Baker Oldsmobile v. Fiat Motors of North America, Inc.*, 794 F.2d 213, 221 (6th Cir. 1984)).  Because the same rules for statutory interpretation apply to the interpretation of the regulations of administrative agencies, *Bowles*, 325 U.S. at 414; *Tesoro Hawaii Corp.*, 405 F.3d at 1346-1347; *Whelan*, 529 F.2d at 1002-1003, this presumption also applies to the interpretation of administrative rules.

Plaintiffs bear the burden of overcoming this presumption.  *Heitsch v. Kavanagh*, 200 F.2d 178, 181 (6th Cir. 1952).  Under the constitutional avoidance doctrine, given a choice between two interpretations, one of which renders the statute unconstitutional, a court must give a statute an interpretation that renders it constitutional.  *Disc. Tobacco City & Lottery, Inc. v. U.S.*, 674 F.3d 509, 549 (6th Cir. 2012) (citing *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001)).  Thus, this Court must presume that R. 400.9415 is constitutional and favor such an interpretation over an alternate one that renders it unconstitutional.  Plaintiffs cannot overcome this heavy burden.

**B.      Plaintiffs fail to state a claim under the Second Amendment.**

The regulation at issue requires foster family homes to safely store firearms. It does not prohibit firearms in a foster family home.  It does not prevent a foster licensee from bearing arms for personal protection.  The rule merely sets forth prudent storage rules for firearms when they are not in use.  Moreover, it is within the agency's authority to regulate for the health, safety, and welfare of the children within Michigan's foster care system.  Mich. Comp. Laws §§ 722.122(1); 722.953(b); 722.958(1).  These reasonable and prudent storage rules do not violate the Constitution.

In *Heller v. District of Columbia*, the Supreme Court recognized that "the Second Amendment conferred an individual right to keep and bear arms" for self-defense.  *Heller v. District of Columbia*, 554 U.S. 570, 595, 635 (2008).  The Court also recognized that the right "was not unlimited."  *Id*. at 595, 626.  For instance, the Court stated that prohibitions on concealed weapons, "the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places" do not infringe on the Second Amendment.  *Id*. at 626-27.

At issue in *Heller* were District of Columbia laws that "totally ban[ned] handgun possession in the home" and required "any lawful firearm in the home to be disassembled or bound by a trigger lock at all times, rendering it inoperable."  *Id*. at 628.  This effected a total ban of firearms for personal defense, which necessarily failed to pass "any of the standards of scrutiny . . . applied to enumerated constitutional rights."  *Id*.  For this reason, the Court did not clarify which standard should generally apply to Second Amendment inquiries, although it did hold that

rational basis review was inappropriate for a "specific, enumerated right." *Id.* at n.

27.

Two years later, the Supreme Court held that the Second Amendment applies

to the states through the Fourteenth Amendment, striking down municipal laws

"effectively banning handgun possession by almost all private citizens." *McDonald*

*v. City of Chicago*, 561 U.S. 742, 750, 791 (2010). In so doing, the Court reiterated

*Heller*'s finding that the Second Amendment was not absolute and "does not imperil

every law regulating firearms." *McDonald*, 561 U.S. at 786.

Neither *Heller* nor *McDonald* determined the appropriate analytic framework

with which to review Second Amendment issues. Circuit courts, however, including

the Sixth Circuit, have concluded that a two-step test applies. The first step

requires a court to determine "whether the challenged law burdens conduct that

falls within the scope of the Second Amendment." *U.S. v. Greeno*, 679 F.3d 510, 518

(6th Cir. 2012); *Tyler v. Hillsdale County Sheriff's Dep't*, 837 F.3d 678, 685 (6th Cir.

2016). If the challenged regulation falls outside the scope of the Second

Amendment, "the regulated activity is categorically unprotected . . . and is not

subject to further Second Amendment review." *Greeno*, 679 F.3d at 518; *Tyler*, 837

F.3d at 686.

If the challenged regulation does fall within the scope of the Second

Amendment, however, a court must then apply the appropriate level of scrutiny.

*Greeno*, 679 F.3d at 518; *Tyler*, 837 F.3d at 686. The Sixth Circuit, following most

other circuit courts, applies intermediate scrutiny.[8]  *Id.* at 693.  Under intermediate

scrutiny, the government's stated objective must be "significant, substantial, or

important" and there must be "a reasonable fit between the challenged regulation

and the asserted objective."  *Id.*  The fit need not be perfect or "'the single best

disposition," so long as it is "in proportion to the interest served.'"  *Id.* (citing

*Neinast v. Bd. of Trs. of Columbus Metro. Library*, 346 F.3d 585, 594 (6th Cir.

2003)).


## 1.      The regulation at issue does not impinge on core Second Amendment rights.

Applying the first step of this test, R. 400.9415(3) does not impinge on core

Second Amendment rights.  *Heller* held that several limitations fell outside the

ambit of Second Amendment protection, including prohibitions on concealed

weapons, "possession of firearms by felons and the mentally ill, or laws forbidding

the carrying of firearms in sensitive places such as schools," a list which "does not

purport to be exhaustive."  *Id.* at 626-627.  *See also U.S. v. Marzzarella*, 614 F.3d

85, 91-92 (3d Cir. 2010).  Nor are presumptively lawful firearms regulations

---

[8] *Heller v. District of Columbia*, 670 F.3d 1244, 1252-53, 1257-58 (D.C. Circ. 2011);
*New York State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 254-56, 259 (2d Cir.
2015); *U.S. v. Marzzarella*, 614 F.3d 85, 89, 97-98 (3d Cir. 2010); *Willard v.
Gallagher*, 712 F.3d 865, 874-76 (4th Cir. 2013); *NRA of Am. v. Bureau of Alcohol*,
700 F.3d 185, 194, 205-06 (5th Cir. 2012); *U.S. v. Chovan*, 735 F. 3d 1127, 1136-38
(9th Cir. 2012); *U.S. v. Reese*, 627 F.3d 792, 800-802 (10th Cir. 2010);
*GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Eng'rs*, 788 F.3d 1318, 1324 (11th Cir.
2015) (endorsing two-step test, but not reaching second step).  But see *Wrenn v.
District of Columbia*, 864 F.3d 650 (D.C. Circ. 2017), petition for en banc review
pending.

necessarily limited to those which existed at the time of ratification. *Id*. at 93. Thus, the Third Circuit held that the prohibition on firearms without serial numbers in 18 U.S.C. § 922(k), which was enacted in 1968, fell outside the scope of the Second Amendment and was presumptively valid even though it did predate the 1791 ratification of the Second Amendment. *Marzzarella*, 614 F.3d 93-94.

Similarly, there is "a longstanding tradition of targeting select groups' ability to access and use arms" in the interests of public safety, including restrictions based on age. *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 203 (5th Cir. 2012). Firearms can also be banned from sensitive areas. *Bonidy v. U.S. Postal Service*, 790 F.3d 1121, 1125 (10th Cir. 2015). Indeed, "an expectation of sensible gun safety regulation was woven into the tapestry" of the Second Amendment. *Nat'l Rifle Ass'n*, 700 F.3d at 200. And in the early Republic, states regularly enacted laws regulating firearm storage and use. Saul Cornell, *A Well-Regulated Right: The Early American Origins of Gun Control*, 73 Fordham L. Rev. 487, 502-517 (2004).

The present rule deals with two areas that traditionally do not infringe on the Second Amendment: sensitive areas and preventing children from having access to firearms. Regarding sensitive areas, a licensed foster home is analogous to a school because both have temporary control over others' children. In the case of schools, they have temporary control during the school day or during extracurricular activities. And licensed foster parents have temporary control of

children over whom the state has temporary custody.[9]  And, under Michigan law, a foster home is a child care organization.  Mich. Comp. Laws § 722.111(1)(a).

The rule at issue also serves to prevent foster children from accessing unsecured firearms.  The importance of preventing children from having access to firearms has a long history, going back to at least the eighteenth century.  *Nat'l Rifle Ass'n*, 700 F.3d at 200-204.  These restrictions are based on safety issues.  *Id*. Thus, "there is considerable historical evidence of age- and safety-based restrictions on the ability to access arms."  *Id*. at 204.  Furthermore, the rule at issue is relatively longstanding in the context of foster care licensing rules, going back to 2000.  (Annual Admin. Code Supp. 1998-2000, Ex. 18[10].)  It is therefore presumptively valid.  *Marzzarella*, 614 F.3d at 93-94.

The case law allows a complete prohibition of firearms from sensitive areas and from children.  *Bonidy*, 790 F.3d at 1125; *Nat'l Rifle Ass'n*, 700 F.3d at 200-204. To protect the health, welfare, and safety of children and the public, the Department requires foster parents to use prudent storage regulations and to produce proof of handgun registration, in conformity with Michigan law.  Mich.

---

[9] Michigan's foster care system, like schools and teachers, serves in an *in loco parentis* capacity because it is responsible for keeping children safe while in its custody.  *Knox Co. Educ. Ass'n v. Knox Co. Bd. Of Educ.*, 158 F.3d 361, 375 (6th Cir. 1998).  According to the Sixth Circuit, "young children could cause harm to themselves or others . . . and [thus are] in need of constant attention and supervision.  Even momentary inattention or delay in dealing with a potentially dangerous or emergency situation could have grievous consequences."  *Id.* at 379.

[10] The former policy was codified at R. 400.9414 and referred to the hazardous materials policy for child placing agencies, which was codified at R. 400.12416 and included firearm safety rules.  (Ex. 18.)

Comp. Laws §§ 28.422; 28.422a.  It does not prohibit firearms from licensed foster homes, nor does it prohibit licensed foster parents from bearing arms.  Rule 400.9415(3) therefore does not impinge on core Second Amendment rights.  Because the Rule is outside the ambit of the Second Amendment, it is presumptively valid and this Court need proceed no further in its analysis.  *Greeno*, 679 F.3d at 686.

2. **To the extent the Rule impinges on the Second Amendment, it satisfies the intermediate scrutiny test.**

To the extent this Court believes the rule impinges on core Second Amendment protections, it must apply intermediate scrutiny, which employs a two-step test.  *Tyler*, 837 F.3d at 693.  First, the government's stated objective must be "significant, substantial, or important."  *Id*.  Second, there must be "a reasonable fit between the challenged regulation and the asserted objective."  *Id*.

a. **The Department has a compelling governmental interest in the safety of children and public safety.**

Rule 400.9415(3) protects the safety of children within Michigan's foster care system and, by extension, the safety of the public by attempting to limit firearm deaths and injuries in licensed foster homes, whether by intent, accident or suicide.  This necessarily includes the prevention of deaths of foster children.  The Department promulgated R. 400.9415 to protect the "health and safety" of foster children and "minimize risk" to them, an especially important issue for "children who have suffered trauma and abuse."  (Regulatory Impact Statement, p. 5, Ex. 19)

Case law confirms these to be important or compelling state interests. The protection of the public, including minimizing firearm deaths in the home by accident or suicide, is not only an important but a compelling governmental interest. *Tyler*, 837 F.3d at 693. *See also Jackson v. City and County of San Francisco*, 746 F.3d 953, 966 (9th Cir. 2014), cert. den. 135 S. Ct. 2799 (2016) (objective of reducing gun-related injuries and deaths from unsecured firearms is a significant governmental interest); *U.S. v. Mahin*, 668 F.3d 119, 126 (4th Cir. 2012) (state has substantial interest in reducing gun-related domestic violence); *U.S. v. Chapman*, 666 F.3d 220, 227 (4th Cir. 2012) (state has substantial interest in reducing domestic gun violence); *Nat'l Rifle Ass'n*, 700 F.3d at 209 ("curbing violent crime perpetrated by young persons . . . constitutes an important governmental interest."); *Hall v. Sweet*, 555 F. App'x 469, 477 (6th Cir. 2016) (state has "an overwhelming justification in ensuring child wellbeing"), Ex. 14; *Clark v. Adams,* No. CIV.A. 06-37-KSF, 2010 WL 598623, at *4 (E.D. Ky. Feb. 17, 2010) ("well being [sic] of the state's foster children" is an important state interest), Ex. 15. Accordingly, these interests satisfy intermediate scrutiny, which merely requires that the governmental interest be important.

> **b.  There is a reasonable fit between R. 400.9415(3) and the Department's interest in the safety of children and public safety.**

The second step requires a "reasonable fit" between the important governmental objective and the regulation. *Tyler*, 837 F.3d at 693. The fit need not be perfect or "'the single best disposition," so long as it is "in proportion to the

interest served.'" *Id.* (citing *Neinast,* 346 F.3d at 594 (6th Cir. 2003)). Governments may rely on a wide variety of sources – "legislative history, empirical evidence, case law, and even common sense" – but cannot rely solely on mere supposition. *Tyler*, 837 F.3d at 694. Under intermediate scrutiny, the regulation need not be narrowly tailored and can "permissibly regulate more conduct (or more people) than necessary." *Id.* at 698. And "in the context of gun safety," "inherent imprecision of a prophylactic rule" is acceptable. *Id.* (citing *Weinberger v. Salfi*, 422 U.S. 749, 777 (1975)), (internal citations omitted).

Rule 400.9415(3) satisfies the "reasonably fit" prong of the test. As shown above, the rule only regulates storage of firearms and ammunition, and further requires handgun owners to show compliance with Michigan's handgun registration law. Mich. Comp. Laws §§ 28.422; 28.422a. The rule does not prevent firearm ownership or possession; it does not bar a licensed foster parent from actively bearing arms, or using them for self-defense or sporting purposes. The requirements are situational, limited to licensed foster homes, rather than categorical, and are limited to storage and do not prohibit possession or use. They merely require that a person who seeks to be entrusted with providing supervision and care to state wards stores firearms in a safe manner to protect foster children.

The requirements of R. 400.9415 prevent foster children from encountering unsecured firearms and ammunition, and prevent foster homes from keeping unregistered and, therefore illegal, handguns. Moreover, any burden imposed is necessarily temporary in nature because it is tied to a foster care license.

Temporary burdens, even when they completely ban a group of citizens from possessing firearms, generally satisfy intermediate scrutiny because the burden is only imposed while certain conditions are met. *Mahin*, 668 F.3d at 125 (prohibition on firearm possession narrowly tailored to apply only for duration of personal protection order); *Chapman*, 666 F.3d at 227 (prohibition on firearm possession narrowly tailored to apply only for duration of personal protection order); *Nat'l Rifle Ass'n*, 700 F.3d at 207 (age-based sale restriction temporary because those "subject to the ban will soon grow up and out of its reach."). Here, there is no ban, only reasonable storage requirements for licensed foster homes.

Courts have upheld far more sweeping storage requirements. The Ninth Circuit dealt with a San Francisco ordinance that prohibited any handgun in a residence unless it was "'stored in a locked container or disabled with a[n approved] trigger lock'" or "'carried on the person of an individual over the age of eighteen.'" *Jackson*, 746 F.3d at 959 (internal citations omitted). A group of plaintiffs challenged the ordinance, alleging that it violated their Second Amendment right to "keep their handguns within the home in a manner ready for immediate use" for self-defense. *Id*. The Court applied the two-step test, finding that the ordinance did not fall within a traditional category of state regulation and thus proceeded to the intermediate scrutiny test. *Id*. at 962-63.

The Court found that the ordinance "requires San Franciscans to choose, while in their homes, between carrying a handgun on their person and storing it in a locked container or with a trigger lock." *Id*. at 963. Because it is impractical to

carry a gun at all times, "such as when sleeping or bathing," it effectively required handguns to sometimes be stored in a locked container or with a trigger lock. *Id.* at 963-64. Importantly, unlike the provision at issue in *Heller*, the ordinance did not prevent lawful citizens from defending themselves with firearms. *Id.* at 964. Rather, it left open "alternative channels to self-defense in the home" because people could carry the firearm "on their person." *Id.*

On the first prong of the intermediate scrutiny test, the Court found that San Francisco's asserted objective of reducing gun-related injuries and deaths resulting from unsecured firearms was a significant governmental interest. *Id.* at 966.

Moving to the second prong, the Court held that firearm injuries were the "third-leading cause of death in San Francisco" and an unsecured firearm "increases the risk of gun-related injury, especially to children." *Id.* at 966. The Court rejected the plaintiffs' contention that the ordinance was overly broad because it applied regardless of whether there were any children present in the home. *Id.* In addition, the Court held that the burden imposed was minimal "because it causes a delay of only a few seconds while the firearm is unlocked or retrieved from storage." *Id.* The ordinance therefore satisfied the intermediate scrutiny test.

The ordinance at issue in *Jackson* was far more intrusive than R. 400.9415(3). In the first instance, it applied to *all* handguns in *all* residences in San Francisco. Although child safety comprised one of the significant governmental interests at stake, the ordinance applied whether children were in the residence or not. Rule 400.9415(3), however, is focused *solely* on licensed foster homes, not all

residences. It thus fits very closely with the significant interest of protecting children from injury or death from unsecured firearms and satisfies the intermediate scrutiny test. And the temporary nature of the requirements of R. 400.9415(3) means that they are not just a good fit, but are narrowly tailored to achieve the important governmental interest of protecting children. *Mahin*, 668 F.3d at 125; *see also Chapman*, 666 F.3d at 227; *Nat'l Rifle Ass'n*, 700 F.3d at 207.

Moreover, there is no right to a foster care license. And the foster parent relationship is a voluntary relationship created by state law and contractual relationships. *Smith v. Org. of Foster Families for Equality and Reform*, 431 U.S. 816, 844-47 (1977); *Renfro v. Cuyahoga County Department of Human Services*, 884 F.2d 943, 944 (6th Cir. 1989). In such relationships, participants can agree to curtail their rights. In *Hall v. Sweet*, the Sixth Circuit held that a daycare provider who had consented to inspections of her home pursuant to licensing investigations had validly waived her Fourth Amendment right to be free from warrantless searches. *Hall*, 555 F. App'x At 472, 476. Even though the consent was a condition of receiving a child care license, thus directly affecting the plaintiff's livelihood, the Court held "'conditions can lawfully be imposed on the receipt of a benefit— conditions that may include the surrender of a constitutional right.'" *Id*. at 476 (citing *Burgess v. Lowery*, 201 F.3d 942, 947 (7th Cir. 2000)). Moreover, the Court held that the state has an "overwhelming justification in ensuring child wellbeing is adequately protected." *Hall*, 666 F. App'x at 477. Accordingly, no Fourth Amendment violation occurred. *Id*.

The Court also addressed the issue of the child care license being conditioned on consent to search and stated that these types of conditions are lawful and reasonable.  *Id.* at 476-77 (citing *Burgess,* 201 F.3d at 947 (7th Cir. 2000) and *Knox,* 158 F.3d at 366-67, 384).  Consent provisions are reasonable because "the state has an overwhelming justification in ensuring child wellbeing is adequately protected at the locations it licenses for child care."  *Hall*, 666 F. App'x at 477.

Here, although the Johnsons contend that R. 400.9415(3) interfered with their ability to care for their grandson, this allegation ignores the fact that a relative placement requires no foster care license.  Mich. Comp. Laws § 712A.13a(1)(e).  Moreover, it remains uncontested that the Johnsons' grandson was placed with them despite the fact that they had no foster care license.  Indeed, the entire time their grandson was placed with them, the Johnsons lacked a foster care license.

For the reasons stated above, Plaintiffs have failed to state a claim that R. 400.9415(3) violates their Second Amendment rights.  Accordingly, their first count must be dismissed.

### C.  Plaintiffs fail to state a claim under the Fourteenth Amendment.

Plaintiffs base their claims for relief under 42 U.S.C. § 1981 and the Fourteenth Amendment "solely on their status as foster and adoptive parents, and

would-be foster and adoptive parents"[11] rather than on Second Amendment

grounds.[12]  (Doc. 1, Cplt., ¶¶ 30, 32, Pg. ID 8-9.)  These claims must fail because

they raise no actionable claim under § 1981, they articulate no suspect category for

Equal Protection purposes, and they fail to identify a recognized substantive Due

Process right.

### 1.    Section 1981 has no application to the present case.

Plaintiffs' § 1981 claims in counts II and II are "based solely on their status

as foster and adoptive parents."  (Doc. 1, Cplt., ¶¶ 30, 32, Pg. ID 8-9.)  But "section

1981 only provides a cause of action for alleged discrimination on the basis of race,

alienage, ancestry or ethnic characteristics." *Ali v. Advance Am. Cash Advance

Centers, Inc.*, 110 F. Supp. 3d 754, 757 (E.D. Mich. 2015) (citing *St. Francis College

v. Al–Khazraji,* 481 U.S. 604, 613 (1987)).  Section 1981 does not apply outside of

this limited area and thus has no application to the present case.  *Runyon v.

McCrary*, 427 U.S. 160, 167-69 (1976).

---

[11] As stated in the standing section, the rights of "adoptive parents" and "would-be" foster or adoptive parents" are not before the Court.

[12] Nor could Plaintiffs use Due Process to raise issues related to their right to bear arms under the Second Amendment.  The Due Process Clause cannot be expanded to cover situations where another Amendment provides an explicit textual source of constitutional protection because an action "is necessarily governed by the more definite provision of the Constitution." *County of Sacramento v Lewis*, 523 US 833, 842 (1998). *See also Albright v. Oliver,* 510 U.S. 266, 273, (1994); quoting *Graham v. Connor,* 490 U.S. 386, 395 (1989).

### 2. Plaintiffs' Equal Protection claim fails because the rule at issues satisfies the rational basis test.

Plaintiffs appear to assert that the Equal Protection rights of "foster and adoptive parents, and would-be foster and adoptive parents" are violated by the rule at issue.[13] (Doc. 1, Cplt., ¶ 30, Pg. ID 8-9.) To assert such a claim, they must be part of a suspect class. However, while the Johnsons have started, but not completed a foster license application, and the Masons never applied, foster parents do not comprise a suspect class. *Jones v. Ada S. McKinley Cmty. Servs.* No. 89 C 0319, 1989 WL 105231, at *1 (N.D. Ill. Sept. 1, 1989) (finding no authority that foster parents comprised a protected class), Ex. 21; *Jones v. Ada S. McKinley Cmty. Servs.* No. 89 C 0319, 1989 WL 152352, at *1, 6 (N.D. Ill. Nov. 28, 1989) ("[I]n light of the characteristics of classes which have received protection, discrete and insular minorities unable to utilize the political process to correct inequalities, it is absurd to assert foster parents would qualify for protection."), Ex. 22.

Because no suspect class is involved, the rational basis test applies. *Romer v. Evans,* 517 U.S. 620, 631 (1996). A governmental classification, whether by administrative rule or statute, must be affirmed "so long as it bears a rational relation to some legitimate end." *Id.* Under rational basis review, courts must presume the constitutionality of the classification at issue and affirm it so long as there is any rational relationship between the classification and a legitimate governmental interest. *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993). The

---

[13] As stated in the standing section, the rights of "adoptive parents" are not before the Court. Nor are the rights of "would-be" foster or adoptive parents.

government does not need to express its rationale for the classification, nor does it need to produce any evidence in support of it. *Id.* at 320. Rather, it survives an "equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.*, internal citations omitted. The classification survives review even where the fit between the rule at issue and a legitimate governmental interest is imperfect or rough. *Id.* at 321. In addition, the party challenging the classification has the burden "to negative every conceivable basis which might support it, whether or not the basis has a foundation in the record." *Id.* at 320, internal citation omitted.

Plaintiffs appear to allege that the classification of R. 400.9415(3) impermissibly infringes on their substantive Equal Protection rights. Because R. 400.9415)(3) survives intermediate scrutiny, as shown above, it also satisfies rational basis review. Rule 400.9415(3) protects the safety of children within Michigan's foster care system, as well as the safety of the public by attempting to limit firearm deaths in licensed foster homes, whether by intent, accident or suicide. These are more than just legitimate state interests – they are important and even compelling state interests. *Tyler*, 837 F.3d at 693; *Jackson*, 746 F.3d at 966 *Mahin*, 668 F.3d at 126; *Chapman*, 666 F.3d at 227; *Nat'l Rifle Ass'n*, 700 F.3d at 209; *Hall*, 555 F. App'x at 477; *Clark*, 2010 WL 598623, at *4.

Rule 400.9415(3) is reasonably related to this legitimate governmental purpose because its prudent storage rules help prevent foster children from encountering unsecured firearms and ammunition, and prevent foster homes from

keeping unregistered and, therefore illegal, handguns.  Because R. 400.9415)(3) satisfies rational basis review, this Court should dismiss Plaintiffs' Equal Protection claim.

### 3. Plaintiffs fail to raise a right protected by substantive Due Process.

Although Plaintiffs appear to assert that the substantive Due Process rights of "foster and adoptive parents, and would-be foster and adoptive parents" are violated by R. 400.9415(3), as discussed previously, only the rights of foster parents are at issue.  (Doc. 1, Cplt., ¶ 32, Pg. ID 9.)  But Courts have repeatedly rejected attempts to raise the foster parenting relationship to the status of a substantive Due Process right.  And, in Michigan, adoptive parents are not treated any differently than birth parents.

Substantive Due Process is a legal "doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the procedures employed" to protect those interests.  *Does v. Munoz*, 597 F.3d 961, 964 (6th Cir. 2007).  Courts employ strict scrutiny review of governmental action affecting substantive Due Process rights.  *Id.*  But very few rights are entitled to substantive Due Process protections.  *Id.*  As shown below, courts have rejected claims that the foster parent relationship is protected by substantive Due Process

Forty years ago, the Supreme Court declined to extend substantive Due Process rights to foster parents.  *Smith*, 431 U.S. at 844-47.  According to the Court, there exist "important distinctions between the foster family and the natural

family." *Id.* at 845. In particular, unlike a natural family which preexists the state, a foster family "has its source in state law and contractual relationships" in which "the State has been a partner from the outset." *Id.*

This Court considered the issue a few years later and reached the same conclusion: the foster relationship does not give rise to an interest protected by Due Process. *Sherrard v. Owens*, 484 F. Supp. 728, 741 (W.D. Mich. 1980). And state-level administrative procedures are sufficient to protect any licensing interest that a foster family may have. *Id.* at 742. The Sixth Circuit affirmed, holding that the foster parent relationship "did not rise to the level of a constitutionally protected liberty interest." *Sherrard v. Owens*, 644 F.2d 542, 543 (6th Cir. 1981).

The Sixth Circuit reaffirmed this reasoning in *Renfro*, 884 F.2d at 944, holding that the foster relationship did not create a protected Due Process interest because, in contrast to the natural family, it is a temporary relationship created by state law and contractual relationships. Other circuits have similarly held that foster parents do not enjoy substantive Due Process protections. *Wildauer v. Frederick Cty.*, 993 F.2d 369, 373 (4th Cir. 1993); *Drummond v. Fulton Cty. Dep't Family and Children's Serv.*, 563 F.2d 1200, 1206-08 (5th Cir. 1977); *Kyees v. Cty. Dep't of Public Welfare of Tippecanoe Cty.*, 600 F.2dc 693, 698-99 (9th Cir. 1979). Based on decades of precedent, Plaintiffs do not have a right to be foster parents and, therefore, their substantive Due Process claims must be dismissed.

## CONCLUSION AND RELIEF REQUESTED

This Court should dismiss Plaintiffs' claims for lack of jurisdiction because Plaintiffs lack standing and their claims are unripe. In addition, because the present case raises issues related to difficult and important questions of state law, and a decision by this Court would disrupt Michigan's efforts to establish its own policy, the Court should abstain from exercising jurisdiction. Finally, Plaintiffs fail to state a claim upon which relief may be granted because the rule at issue does not impinge on their Second Amendment rights and they assert no actionable Fourteenth Amendment claims.

Respectfully submitted,

/s/ Joshua S. Smith
Jennifer L. A. Walker
Assistant Attorneys General
Attorneys for Defendant
Health, Education & Family
Services Division
P.O. Box 30758
Lansing, MI 48909
Phone: (517) 373-7700
Fax: (517) 335-1152
Smithj46@michigan.gov
Walkerj32@michigan.gov
P63349
P73048

Dated: September 29, 2017

**PROOF OF SERVICE**

I hereby certify that on September 29, 2017, I electronically filed the foregoing document(s) with the Clerk of the Court using the ECF System, which will provide electronic notice and copies of such filing of the following to the parties: Brief in Support of Defendant's Motion to Dismiss or for Summary Judgment.

A courtesy copy of the aforementioned document will be placed in U.P.S. Next Day Air directed to:  Judge Paul L. Malony, 137 Federal Bldg., 410 W. Michigan Avenue, Kalamazoo, MI 49007.

/s/ Joshua S. Smith
Assistant Attorney General
Attorney for Defendant
Health, Education & Family
Services Division
P.O. Box 30758
Lansing, MI  48909
Phone:  (517) 373-7700
Fax:  (517) 335-1152
Smithj46@michigan.gov
P63349