WILLIAM JOHNSON, JILL JOHNSON,
BRIAN MASON, NAOMI MASON, and
SECOND AMENDMENT FOUNDATION,
INC.,

      Plaintiffs,

v.

NICK LYON, in his official capacity as
Director of the Michigan Department of Health
and Human Services,

      Defendant.

No. 17-CV-00124-DLM-TPG

HON. PAUL L. MALONEY

MAG. TIMOTHY P. GREELEY

**DEFENDANT'S REPLY BRIEF
IN SUPPORT OF MOTION TO
DISMISS OR FOR SUMMARY
JUDGMENT**

**ORAL ARGUMENT
REQUESTED**

_____

David G. Sigale
Attorney for Plaintiffs
Law Firm of David G. Sigale, P.C.
799 Rossevelt Road, Suite 207
Glen Ellyn, IL 60137
(630) 452-4547
dsigale@sigalelaw.com

_____

Joshua S. Smith (P63349)
Jennifer L. A. Walker (P73048)
Attorneys for Defendant
Michigan Department of Attorney General
Health, Education & Family Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 373-7700
smithj46@michigan.gov
walkerj32@michigan.gov
_____/

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS OR FOR SUMMARY JUDGMENT**

**ORAL ARGUMENT REQUESTED**

Bill Schuette
Attorney General

Joshua S. Smith
Assistant Attorneys General
Attorneys for Defendant
Health, Education & Family
Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 373-7700
Smithj46@michigan.gov
P63349

Dated:  December 21, 2017

# TABLE OF CONTENTS

Page

Table of Contents .................................................................................................. i

Index of Authorities ............................................................................................. iii

Concise Statement of Issues Presented ................................................................ vii

Controlling or Most Appropriate Authority ......................................................... vii

Introduction ......................................................................................................... 1

Argument .............................................................................................................. 1

I.     The individual Plaintiffs failed to establish – or even address – standing under Lujan. ............................................................................... 1

II.    The Second Amendment Foundation failed to establish organizational standing. ............................................................................................. 2

III.   This case is not ripe for adjudication. ...................................................... 5

IV.    This Court should abstain from exercising jurisdiction. ........................... 6

V.     Plaintiffs failed to state claims under the Second and Fourteenth Amendments. ........................................................................................... 7

       A.     Plaintiffs' Second Amendment Argument fails to address the language of the administrative rule, fails to apply the correct test, and fails to analyze the relevant case law. ................................. 7

              1.     Plaintiffs fail to apply the plain language of Rule 400.9415(3). ............................................................................. 7

              2.     Plaintiffs apply the wrong legal test. .................................... 9

       B.     Plaintiffs failed to clearly distinguish between their Equal Protection and Due Process arguments, and failed to defend their 42 U.S.C. § 1981 claim. ................................................... 13

              1.     Plaintiffs failed to clearly articulate and defend their Due Process claims. ....................................................... 13

i

    2.     Plaintiffs' Due Process assertions are entangled with their Equal Protection claims and are not supported by argument or legal authority. ...................................................... 16

    3.     Plaintiffs failed to respond to Defendants' argument that 42 U.S.C. § 1981 does not apply. ................................................. 17

  C.    Plaintiffs failed to address the voluntary nature of a foster license. ...................................................................................... 18

Conclusion and Relief Requested ............................................................... 20

# INDEX OF AUTHORITIES

Page

**Cases**

*Albright v. Oliver,*
   510 U.S. 266 (1994) ........................................................................................ 13, 16

*Ali v. Advance Am. Cash Advance Centers, Inc.,*
   110 F. Supp. 3d 754 (E.D. Mich. 2015) ................................................................. 17

*Amway Glob. v. Woodward,*
   744 F. Supp. 2d 657 (E.D. Mich. 2010) ........................................................... passim

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ................................................................................................ 12

*Bowles v. Seminole Rock & Sand Co.,*
   325 U.S. 410 (1945). ................................................................................................. 7

*Burford v. Sun Oil,*
   319 U.S. 315 (1943) .................................................................................................. 6

*Burgess v. Lowery,*
   201 F.3d 942 (7th Cir. 2000) .................................................................................. 18

*Chrysler Corp. v. Comm'r of Internal Revenue,*
   436 F.3d 644 (6th Cir. 2006) ............................................................................. viii, 7

*Compuware Corp. v. Moody's Inv'rs Servs., Inc.,*
   499 F.3d 520 (6th Cir. 2007) .................................................................................. 18

*Elwell v. Byers,*
   699 F.3d 1208 (10th Cir. 2012) .............................................................................. 14

*Enhance, Inc. v. Snyder,*
   No. 16-11854, (E.D. Mich. June 13, 2017) .............................................................. 5

*Ezell v. City of Chicago,*
   651 F.3d 684 (7th Cir. 2011) .................................................................................... 9

*Fernanders v. Mich. Dep't of Military & Veterans Affairs*, No. 12-11752,
   2012 U.S. Dist. LEXIS 111872 at *7 (E.D. Mich. Aug. 9, 2012) ........................... 12

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,*
   528 U.S. 167 (2000) ........................................................................................ viii, 2, 4

*Garcetti v. Ceballos,*
  547 U.S. 410 (2006) ............................................................. 19

*Graham v. Connor,*
  490 U.S. 386 (1989) ............................................................. 16

*Hall v. Sweet,*
  555 F. App'x 469 (6th Cir. 2016) .................................... 18, 19

*Heller v. District of Columbia,*
  554 U.S. 570 (2008) ............................................................. 12

*Howard v. Grinage,*
  82 F.3d 1343 (6th Cir. 1996) .............................................. 15

*Hunter v. SMS, Inc.*, Nos. 86-1004 and 86-1032,
  1988 WL 30056, at *15-*16 (6th Cir. April 6, 1988) ............ 6

*Jackson v. City and County of San Francisco,*
  746 F.3d 953 (9th Cir. 2014), cert. den. 135 S. Ct. 2799 (2016) ............ 12

*Jones v. U-Haul Co. of Massachusetts & Ohio Inc.,*
  16 F. Supp. 3d 922 (S.D. Ohio 2014) .................................. 19

*Knox Cty. Educ. Ass'n v Knox Cty. Bd. of Educ.,*
  158 F.3d 361 (6th Cir. 1998) .............................................. 19

*Kowalski v. Tesmer,*
  543 U.S. 125 (2004) ............................................................... 4

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) .......................................................... viii, 1

*Nat'l Fed. Of Ind. Bus. v. Sibelius,*
  567 U.S. 519 (2012) ............................................................... 6

*Neinast v. Bd. of Trs. of Columbus Metro. Library,*
  346 F.3d 585 (6th Cir. 2003) .............................................. 11

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,*
  491 U.S. 350, 361 (1989) .................................................. viii, 6

*Nordlinger v. Hahn,*
  505 U.S. 1 (1992) ................................................................. 16

*Peoples Rights Organization, Incorporated v. City of Columbus,*
  152 F.3d 522 (6th Cir. 1998) ....................................... 5, 16, 17

*Pierce v. Society of Sisters,*
    268 U.S. 510 (1925) ........................................................ 14

*Prince v. Massachusetts,*
    321 U.S. 158 (1944) ........................................................ 14

*Renfro v. Cuyahgoa Cnty Dep't of Human Servs.,*
    884 F.2d 943 (6th Cir. 1989) ............................... viii, 13, 19

*Romer v. Evans,*
    517 U.S. 620 (1996) ........................................................ 16

*Sherrad v. Owens,*
    484 F. Supp. 728 (W.D. Mich. 1980), *aff'd.,* 644 F.2d 542 (6th Cir. 1981) ............ 13

*Smith v. Org. of Foster Families for Equality and Reform,*
    431 U.S. 816 (1977) ........................................................ 13

*St. Francis College v. Al—Khazraji,*
    481 U.S. 604 (1987) ........................................................ 17

*Tennessee Republican Party v. Securities and Exchange Commission,*
    863 F.3d 507 (6th Cir. 2017) ....................................... 2, 3

*Tennessee Secondary Sch. Athletic Ass'n v. Brentwood Acad.,*
    551 U.S. 291 (2007) ........................................................ 19

*Troxel v. Granville,*
    530 U.S. 57 (2000) ......................................................... 14

*Tyler v. Hillsdale County Sheriff's Dep't,*
    837 F.3d 678 (6th Cir. 2016) ............................. viii, 10, 11

*U.S. v. Greeno,*
    679 F.3d 510 (6th Cir. 2012) ................................... viii, 10

*United States v. Layne,*
    192 F.3d 556 (6th Cir. 1999) ........................... 1, 4, 13, 17

*Village of Arlington Heights v. Metropolitan Housing Development Corporation,*
    429 U.S. 252 (1977) .......................................................... 4

*Warth v. Seldin,*
    422 U.S. 490 (1975) .......................................................... 4

## Statutes

20 ILCS 520/1-20(3) ............................................................................. 15

42 U.S.C. § 1981 ................................................................................. 13

Mich. Comp. Laws § 28.422 ............................................................. 8, 11

Mich. Comp. Laws § 28.422a ................................................................ 11

Mich. Comp. Laws § 712A.13a(1)(e) ..................................................... 18

Mich. Comp. Laws § 722.121(2) ........................................................... 15

## Rules

Mich. Admin. Code R. 400.9415 ..................................................... passim

Mich. Admin. Code R. 400.9415(3) ......................................... 7, 8, 10, 11

Mich. Admin. Code R. 400.9415(3)(a) ...................................................... 8

Mich. Admin. Code R. 400.9415(3)(b) ...................................................... 8

## CONCISE STATEMENT OF ISSUES PRESENTED

1.    Plaintiffs failed to establish standing and their claims are unripe.

2.    This Court should abstain from exercising jurisdiction.

3.    Plaintiffs failed to state claims under the Second and Fourteenth Amendments.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Authority*:    *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 189 (2000); *Amway Glob. v. Woodward*, 744 F. Supp. 2d 657, 669 (E.D. Mich. 2010); *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361–62 (1989); *Chrysler Corp. v. Comm'r of Internal Revenue*, 436 F.3d 644, 654-55 (6th Cir. 2006); *U.S. v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012); *Tyler v. Hillsdale County Sheriff's Dep't*, 837 F.3d 678, 685 (6th Cir. 2016); *Renfro v. Cuyahgoa Cnty Dep't of Human Servs.,* 884 F.2d 943, 944 (6th Cir. 1989).

**INTRODUCTION**

In their Response Brief, Plaintiffs fail to confront the case law, fail to apply applicable legal standards, and fail to address the plain language of the administrative rule at issue, Mich. Admin. Code R. 400.9415.  In place of a reasoned analysis of the law as applied to the allegations in the Complaint, Plaintiffs substitute their own misinterpretation of R. 400.9415, hyperbole and speculation.  They also interject allegations not contained in their Complaint.[1]  Individually, these failures should result in dismissal.  Collectively, they show Plaintiffs claims to be devoid of arguable merit and sink the claims made in their Complaint.

**ARGUMENT**

**I.    The individual Plaintiffs failed to establish – or even address – standing under *Lujan*.**

Plaintiffs fail to adequately address standing.  As explained in Defendant's Brief in Support of Motion to Dismiss, the three-part test for standing, set forth in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992), controls here.  (Def. Br. Supp. Mot. Dismiss, Doc. 8, Pg. ID 44-49.)  Plaintiffs not only failed to establish standing under *Lujan*, they failed to discuss *Lujan* at all, instead resorting to unsupported assertions as shown below, which constitutes a waiver or concession of these issues.  *Amway Glob. v. Woodward*, 744 F. Supp. 2d 657, 669 (E.D. Mich. 2010); *United States v. Layne*, 192 F.3d 556, 566–67 (6th Cir. 1999).

---

[1] For instance, they accurately note that the Johnsons were approved for a foster license, but the Complaint is bereft of any such allegations.  (Pl. Resp., Doc. 29, at Pg. ID 606, 642.)

1

As set forth in Defendant's Motion and Brief, Plaintiffs' personal interest in the litigation must exist both at the commencement of the suit and throughout the suit. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 189 (2000). (Def. Br. Supp. Mot. Dismiss, Doc. 8, Pg. ID 44.) In the instant case, Plaintiffs' original allegations set forth in the Complaint failed to establish a personal interest or redressable harm because the Department had not taken adverse action on their foster license application. Thus, in their Response Brief, the Johnsons assert a new basis for standing based on their receipt of a foster license, which the Department approved on October 23, 2017. (Pl. Resp., Doc. 29, at Pg. ID 612, 642.) This, however, is not alleged in the Complaint and, even if it were, confirms that the Department has not taken adverse action against the Johnsons, and that they have suffered no harm giving rise to Article III standing.

## II. The Second Amendment Foundation failed to establish organizational standing.

Plaintiffs' reliance on *Tennessee Republican Party v. Securities and Exchange Commission*, 863 F.3d 507, 520 (6th Cir. 2017) to assert organization standing is misplaced. In *Tennessee Republican Party*, the Court discussed and applied the test for organizational standing. First, an organization must show it has suffered "a direct injury to the association." *Id.* at 520. In addition, an organization must show a member would have independent standing to sue, the interests asserted relate to the purpose of the organization, and the claim and relief requested do not require the participation of individual members of the organization in the lawsuit. *Id.* The

organization must establish that at least one member has suffered an injury and it must identify that member. *Id.* In *Tennessee Republican Party*, the Sixth Circuit held that the organization lacked standing because it was unable to identify any members who suffered an injury. *Id.* at 520.

Plaintiffs, however, cannot satisfy the organizational standing test. Most notably, Plaintiffs failed to demonstrate, or even allege, that the Second Amendment Foundation (SAF) has suffered any direct injury. And, although Plaintiffs identify the Masons and Johnsons as members, as shown in Defendant's Brief in Support of Motion to Dismiss, Doc.8, Pg. ID 44-50, the individual Plaintiffs also lack standing because they have suffered no redressable harm. Because Plaintiffs failed to satisfy each organizational standing requirement, their claims must be dismissed.

Plaintiffs also assert that SAF has standing in this case based on its participation in other cases. (Pl. Resp., Doc. 29, at Pg. ID 614.) They do not, however, show how participating in those cases satisfies Article III standing requirements in this case. Nor do they demonstrate that standing was raised and decided in those other cases.

In addition, Plaintiffs claim that "the challenge to MDHHS policies do not require individual participation." (Pl. Resp., Doc. 29, at Pg. ID 614.) Contrary to their statement, Plaintiffs challenge an administrative rule, not a policy. And Plaintiffs cite no authority and make no argument to support this claim. In any case, parties are always required to have standing.

Plaintiffs further claim that "once one Plaintiff has standing, jurisdiction is secure and further inquiry into standing is unnecessary," citing to *Village of Arlington Heights v. Metropolitan Housing Development Corporation*, 429 U.S. 252, 263-64 (1977). (Pl. Resp., Doc. 29, at Pg. ID 614.) But *Arlington Heights* contains no such holding. Instead, it found organizational standing because, unlike the present case, an individual member of the organization had standing. *Arlington Heights*, 429 U.S. at 264. And it is well-established that a party must maintain standing throughout a lawsuit. *Friends of the Earth*, 528 U.S. at 189.

In his Motion, Defendant argued that Plaintiffs cannot "allege standing based on a facial or an as-applied challenge." (Def. Br. Supp. Mot. Dismiss, Doc. 8, Pg. ID 47-48.) Plaintiffs failed to refute Defendant's argument, responding instead that facial challenges in the Second Amendment context are proper. (Pl. Resp., Doc. 29, at Pg. ID 614-615.) Plaintiffs ignored the actual issue and supporting case law, showing that they cannot establish standing based on a facial challenge and effectively conceding their inability to refute it. *Amway Glob.*, 744 F. Supp. 2d at 669; *Layne*, 192 F.3d 566–67.

Plaintiffs do not defend their assertion of the rights of "foster and adoptive parents, and would-be foster and adoptive parents." (Doc. 1, Cplt., ¶¶ 28, 30 and 32, Pg. ID 8-9.) As argued in Defendant's principal Brief, Plaintiffs lack standing to assert the alleged rights of other individuals. (Def. Br. Supp. Mot. Dismiss, Doc. 8, Pg. ID 49-50, citing *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) and *Warth v. Seldin*, 422 U.S. 490, 499-502 (1975).)

### III. This case is not ripe for adjudication.

As described in Defendant's Motion and Brief, at the time they filed the Complaint, the Johnsons had not yet completed the foster care licensing process, and the Masons never applied for a license. Lacking imminent injury or hardship, their claims are unripe. (Def. Br. Supp. Mot. Dismiss, Doc. 8, Pg. ID 50-52.) Now that the Johnsons' foster case application has been approved, they cannot show speculative harm, let alone imminent harm or hardship. The Masons, still having no pending application, cannot demonstrate even speculative harm.

And Plaintiffs failed to address the case law cited by Defendant, other than *Enhance, Inc. v. Snyder*, No. 16-11854, (E.D. Mich. June 13, 2017), Doc. 9-13, Pg. ID 322, which they misapply. In *Enhance*, the Court dismissed the plaintiffs' claims that potential enforcement of the Adult Foster Care Licensing Act violated their constitutional and statutory rights because the defendant had taken no adverse action. Contrary to Plaintiffs' assertions, the court did not find the defendant's policy speculative; rather, it found speculative the plaintiffs' claim that the defendant would apply the policy to them. In the present case, R. 400.9415(3) did not prevent the Johnsons from being approved for a foster license.

Plaintiffs mistakenly rely on *Peoples Rights Organization, Incorporated v. City of Columbus*, 152 F.3d 522, 527 (6th Cir. 1998). That challenge was pre-enforcement, meaning that the ordinance at issue was challenged before it took effect. *Id.* at 529. Plaintiffs seem to interpret "pre-enforcement" as meaning "before the government applies the rule to us," rendering their analysis erroneous and irrelevant. The reason this action is unripe is because Defendant has taken no

adverse foster care licensing action against Plaintiffs.  Quite the contrary – it granted the Johnsons application for a foster license.  And the Department cannot take adverse action against the Masons or SAF – the former have not applied for a foster license and the latter, as an organization, cannot apply for a foster license.

Furthermore, the court discussed the standard for ripeness, stating that a plaintiff "must demonstrate actual present harm or a significant possibility of future harm to demonstrate pre-enforcement relief." *Id*. at 527.  Plaintiffs fail to even establish speculative harm.  Accordingly, their claims are unripe.

## IV.    This Court should abstain from exercising jurisdiction.

Regardless of Plaintiffs' denials, their challenge to a foster care rule effectively involves an area of comprehensive and complex state law.  *Burford*[2] abstention thus applies to prevent entanglement between federal courts and state law.  *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361–62 (1989); *Hunter v. SMS, Inc.*, Nos. 86-1004 and 86-1032, 1988 WL 30056, at *15-*16 (6th Cir. April 6, 1988), Ex. 1.  Plaintiffs also ignore that courts are wary of violating principles of state sovereignty.  *Nat'l Fed. Of Ind. Bus. v. Sibelius*, 567 U.S. 519, 575-589 (2012).

Furthermore, pending legislation[3] on this precise issue not only may moot this case, but also demonstrates that Michigan is capable of addressing the

---

[2] *Burford v. Sun Oil*, 319 U.S. 315, 317-18 (1943).

[3] Contrary to Plaintiffs' needless speculation, there is no evidence to suggest that the Legislature would retract SB 527 and HB 4955 if this case is dismissed.  (Pl. Resp., Doc. 29, at Pg. ID 630.)

intersection of firearms and foster homes without federal court involvement. (SB 527, Doc. 9-17, Pg. ID 360; HB 4955, Doc. 9-18, Pg. ID 364.) At the very least, this case should be held in abeyance pending the outcome of the legislative process.

## V.    Plaintiffs failed to state claims under the Second and Fourteenth Amendments.

In response to Defendant's argument that Plaintiffs failed to state claims under the Second and Fourteenth Amendment, Plaintiffs fail to analyze the plain language of the administrative rule at issue, instead proposing a meaning not at all supported by the actual language of the rule. In addition, their Fourteenth Amendment argument fails to clearly distinguish between their Equal Protection and Due Process claims, fails to address the arguments raised in Defendant's Brief, and has no support in the case law.

### A.    Plaintiffs' Second Amendment Argument fails to address the language of the administrative rule, fails to apply the correct test, and fails to analyze the relevant case law.

#### 1.    Plaintiffs fail to apply the plain language of Rule 400.9415(3).

Where a rule or statue is at issue, the starting place is the plain language of the rule or statute itself. *Chrysler Corp. v. Comm'r of Internal Revenue*, 436 F.3d 644, 654-55 (6th Cir. 2006); *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410 414 (1945). Despite this cardinal rule, Plaintiffs fail to discuss the language of R. 400.9415(3) and fail to apply long-established rules of statutory interpretation. Instead, Plaintiffs substitute their own inaccurate and unsupported beliefs about

the effect of R. 400.9415(3), claiming it prevents them altogether from defending themselves or their homes.

This claim has no merit. As discussed in Defendant's principal Brief, the plain language of R. 400.9415 provides that, in a licensed foster home, firearms must be stored in a locked metal or solid wood gun safe. Rule 400.9415(3)(a). Alternatively, firearms may be stored outside of a safe if they are unloaded and have trigger locks. *Id*. at § (3)(b). Ammunition must be stored in a separate, locked location. *Id*. at § (3)(c). Handguns must comport with Michigan's registration requirements. *Id*. at § (3)(d); Mich. Comp. Laws §§ 28.422; 28.422a. Nothing in the language of Rule 400.9415(3) prevents licensed foster parents from bearing operable firearms for any purpose. Instead, they must establish safe-storage practices for guns and ammunition when not in use or on the person.

Rather than confront actual language of the rule, Plaintiffs cite to research on this issue, asserting this was raised "[i]n Defendant's Motion and in the Defendant's *amicus* briefs." (Pl. Resp., Doc. 29, at Pg. ID 623.) But there is no mention of *any* such research in Defendant's Motion or the supporting Brief. And "Defendant" filed no amicus briefs. Instead, *third parties* filed *motions* asking for leave of the Court to file amicus briefs, attaching proposed briefs as exhibits. They were not *Defendant's* briefs. And the briefs themselves are not before the Court because the Court has not yet ruled on the amicus parties' motions.

This Court need not consider the research cited by Plaintiffs to decide whether their claims should be dismissed. Defendant challenges the Complaint,

which does not reference the articles cited by Plaintiffs, and Plaintiffs' standing to bring their claims. Defendant's Motion presents legal issues; considering matters outside the Complaint is unnecessary because further fact development will not support Plaintiffs' claims.

### 2.  Plaintiffs apply the wrong legal test.

Plaintiffs rely on a "two-step" test applied by the Seventh Circuit in *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011). Yet they fail to state or explain what that "two-step framework" is or how it applies to their claims. They similarly fail to explain why this Court should follow a Seventh Circuit case and fail to address the Sixth Circuit's case law cited by Defendant.

Moreover, *Ezell* is easily distinguishable. *Ezell* addressed Chicago's wide-ranging firearm ordinance, which banned handgun possession outside the home, banned long guns outside the home or in a place of business, limited the number of firearms individuals could keep in their homes and effectively banned gun firing ranges within the city limits. *Ezell*, 561 F.3d at 690-91. As explained in Defendant's principal brief and in this Reply, the safe storage requirements of R. 400.9415 are narrowly tailored and do not impinge on the Second Amendment. (Def. Br. Supp. Mot. Dismiss, Doc. 8, Pg. ID 54-69.)

Plaintiffs then allege that "[b]anning functional firearms from home use clearly implicates the Second Amendment." (Pl. Resp., Doc. 29, at Pg. ID 625.) But Rule 400.9415 does not do that. Even if it somehow did, Plaintiffs fail to explain how this satisfies *Ezell* or why this Court would apply Seventh Circuit precedent

over that of the Sixth Circuit.  In essence, Plaintiffs do not argue that R. 400.9415(3) violates the Sixth Circuit's Second Amendment jurisprudence so much as they assert that their fictionalized version of the Rule fails to satisfy the Seventh Circuit's standards.  Plaintiffs not only miss the target, they fail to even aim at the right one.

As established in Defendant's principal brief, Doc. 8, at Pg. ID 59-60, the Sixth Circuit, like most circuit courts, employs a two-part test to determine whether a firearm regulation violates the Second Amendment.  *U.S. v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012); *Tyler v. Hillsdale Cnty. Sheriff's Dep't*, 837 F.3d 678, 685 (6th Cir. 2016).  The first step determines whether the regulation impinges upon the Second Amendment.  *Greeno*, 679 F.3d at 518; *Tyler*, 837 F.3d at 685.  If it does not, then it passes muster and no further review is required.  If the regulation does impinge on the Second Amendment, then the court applies the intermediate scrutiny test.  *Tyler*, 837 F.3d at 693.

Plaintiffs fail to address or even cite *Greeno* or *Tyler*.  Nor do they address the plethora of case law from other circuits on this point.  Instead, they assert, without support, that strict scrutiny applies.  (Pl. Resp., Doc. 29, at Pg. ID 625-626.)  As established in Defendant's principal brief, R. 400.9415(3) does not impinge on the Second Amendment because its reasonable safe storage requirements do not prohibit firearms in a licensed foster home and do not prohibit licensed foster parents from bearing firearms.  (Def. Br. Supp. Mot. Dismiss, Doc. 8, Pg. ID 55-63.)

Plaintiffs fail to refute this point, instead relying on their misinterpretation of R. 400.9415 rather than its actual language.

Even if R. 400.9415 does impinge on the Second Amendment, the intermediate scrutiny test applies and is satisfied by the language of the Rule. (Def. Br. Supp. Mot. Dismiss, Doc. 8, Pg. ID 63-69.) To satisfy intermediate scrutiny, the government's stated objective must: (1) be "significant, substantial, or important"; and (2) there must be "a reasonable fit between the challenged regulation and the asserted objective." *Tyler*, 837 F.3d at 693. Plaintiffs, however, fail to address this test, although they concede, by acknowledging that the Department has a compelling interest in the safety of children, that Defendant satisfies the first element.[4] (Pl. Resp., Doc. 29, at Pg. ID 622, 626.)

The fit required by the second step need not be perfect or "'the single best disposition," so long as it is "in proportion to the interest served."' *Tyler*, 837 F.3d at 693, citing *Neinast v. Bd. of Trs. of Columbus Metro. Library*, 346 F.3d 585, 594 (6th Cir. 2003). Rule 400.9415(3) satisfies the "reasonable fit" prong of the test because it only regulates storage of firearms and ammunition, and further requires handgun owners to show compliance with Michigan's handgun registration law. Mich. Comp. Laws §§ 28.422; 28.422a. It does not prevent firearm ownership or possession; it does not bar a licensed foster parent from actively bearing arms, or using them for self-defense or sporting purposes. The requirements are situational, limited to

---

[4] If Defendant's interest is compelling, it follows that it must be important.

licensed foster homes, rather than categorical, and are limited to storage and do not prohibit possession or use.

Courts have upheld far more sweeping storage requirements. *Jackson v. City and County of San Francisco*, 746 F.3d 953, 959, 966 (9th Cir. 2014), cert. den. 135 S. Ct. 2799 (2016) (upholding city ordinance prohibiting handguns in a residence unless stored in a locked container or disabled with a trigger lock or carried by an adult). Although Plaintiffs criticize *Jackson* as contravening *Heller v. District of Columbia*, 554 U.S. 570 (2008), Pl. Resp., Doc. 29, at Pg. ID 622, their criticism does not comport with the fact that *Jackson* was decided after *Heller* and the Supreme Court denied *certiorari*.

Finally, Defendants failed to respond to several arguments regarding the vagueness of their claims. (Def. Br. Supp. Mot. Dismiss, Doc. 8, Pg. ID 54-55, 71.) As shown above, Plaintiffs did not refute Defendant's argument that they cannot assert the rights of "would-be foster parents, adoptive parents and would-be adoptive parents." (Doc. 1, Cplt., ¶¶ 28, 30 and 32, Pg. ID 8-9.)

In addition, Plaintiffs failed to defend their broad challenge of "all other Michigan statutory language," and fail to cite any Michigan statutory language that allegedly violates their rights. (Doc. 1, Cplt., ¶¶ 28, 30 and 32, Pg. ID 8-9, 11-12.) These allegations fail to satisfy federal pleading requirements and must be dismissed. *Ashcroft v. Iqbal,* 556 U.S. 662, 678-679 (2009); *Fernanders v. Mich. Dep't of Military & Veterans Affairs*, No. 12-11752, 2012 U.S. Dist. LEXIS 111872 at *7 (E.D. Mich. Aug. 9, 2012), Doc. 9-2 and Pg. ID 223. Similarly, although Plaintiffs

purport to challenge the entirety of R. 400.9415, the nature of their challenge pertains solely to § (3), which addresses firearms. They do not dispute this in their Response. Accordingly, this Court should find they have conceded or otherwise waived these issues. *Amway Glob.*, 744 F. Supp. 2d at 669; *Layne*, 192 F.3d 566–67.

**B.      Plaintiffs failed to clearly distinguish between their Equal Protection and Due Process arguments, and failed to defend their 42 U.S.C. § 1981 claim.**

**1.      Plaintiffs failed to clearly articulate and defend their Due Process claims.**

Plaintiffs incorrectly assert that foster parents have fundamental Due Process rights. Historically, substantive Due Process rights have been applied to "marriage, family, procreation, and the right to bodily integrity," and the Supreme Court has been reluctant to expand those rights. *Albright v. Oliver,* 510 U.S. 266, 271-272 (1994). Courts have consistently held that substantive Due Process rights do not extend to the state-created foster relationships. See generally *Smith v. Org. of Foster Families for Equality and Reform,* 431 U.S. 816, 844-47 (1977). The Sixth Circuit has also concluded that foster relationships are only "a temporary arrangement created by state and contractual agreements," and have declined to hold they are a constitutionally protected right. *Renfro v. Cuyahgoa Cnty Dep't of Human Servs.,* 884 F.2d 943, 944 (6th Cir. 1989) (citing *Sherrad v. Owens,* 484 F. Supp. 728 (W.D. Mich. 1980), *aff'd.,* 644 F.2d 542 (6th Cir. 1981)).

Despite what Plaintiffs appear to claim, the fundamental rights of natural parents are not extended to foster parents. At the core of the cases Plaintiffs have

cited, *Pierce v. Society of Sisters,* 268 U.S. 510 (1925)*, Prince v. Massachusetts*, 321

U.S. 158 (1944)*,* and *Troxel v. Granville,* 530 U.S. 57 (2000), are the long-standing

fundamental rights of *natural* parents. The instant case does not involve the

constitutional rights of *natural* parents, but instead, deals with newly-licensed

foster parents (the Johnsons) and purported would-be foster parents (the Masons).

As such, Plaintiffs do not hold long-standing fundamental rights of natural parents,

and are merely involved in a contractual arrangement, or potential contractual

arrangement, with the State of Michigan to provide temporary care for children

under the State's supervision and care. Because Plaintiffs are subject to licensure

requirements ensuring that they are qualified to provide foster care and agree to do

so in accordance with applicable rules and policy, they cannot ride the coat-tails of

the rights of natural parents to secure substantive Due Process rights.

Plaintiffs, as foster parents and would-be foster parents, are not a protected

class and have incorrectly relied on *Elwell v. Byers,* 699 F.3d 1208 (10th Cir. 2012),

to assert their substantive Due Process rights. *Elwell*, a Tenth Circuit case, clearly

states that typical foster parents do not have a liberty interest in keeping the foster

home. *Id.* at 1216-1217. As the court stated, the Elwells were in a special situation

because (1) they were in the process of adopting the child, (2) the child's parents had

their rights terminated, and (3) the Elwells were the only parental figures the child

had known. *Id.* Further, the violation the court found was with the Elwell's

procedural Due Process rights because they were not afforded a hearing prior to the

child being removed from their care. *Id.* at 1218. Plaintiffs have failed to explain

why they fit into the same category as the Elwells.  The Johnsons and Masons are not in the process of adopting any children from foster care and procedural Due Process rights are not at issue in this case.  Furthermore, the present case is not in the Tenth Circuit.

Additionally, Plaintiffs cite no legal authority that supports their substantive Due Process claims.  Plaintiffs cite Mich. Comp. Laws § 722.121(2), which is merely a *statutory* procedural provision that requires the Department to provide an opportunity for an administrative hearing prior to taking an adverse licensing action.  Plaintiffs have not asserted a procedural Due Process right violation and, in any case, this statute cannot create a substantive Due Process right.  See *Howard v. Grinage,* 82 F.3d 1343, 1349 (6th Cir. 1996).  Further, the Johnsons, now licensed, have not been subjected to any discipline of their license or denied any procedural Due Process.  And Plaintiffs' reliance on a statement from the Michigan DHHS website and an Illinois statute, 20 ILCS 520/1-20(3), is misplaced.  (Pl. Resp., Doc. 29, at Pg. ID 633.)  These are completely irrelevant to the case and neither websites nor out-of-state statutes establish a substantive Due Process right.

To the extent this case involves the right to keep and bear arms, it cannot be analyzed under substantive Due Process.  Plaintiffs' claims that their fundamental right of "armed self-defense" has been violated and that strict scrutiny applies do not comport with controlling Supreme Court precedent.  The Supreme Court has held that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that

Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright,* 510 U.S. at 273 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989) (internal quotation marks omitted)).  Thus, Plaintiffs' assertions that R. 400.9415 interferes with their Second Amendment rights must be analyzed under the Second Amendment, not the Due Process Clause.

> **2.    Plaintiffs' Due Process assertions are entangled with their Equal Protection claims and are not supported by argument or legal authority.**

Plaintiffs failed to articulate how foster parents and would-be foster parents are a suspect class protected by the Equal Protection Clause.  Rather than directly analyze the Equal Protection Clause, Plaintiffs appear to assert that because they are foster parents and would-be foster parents, and have rights to raise children and defend themselves, that R. 400.9415 is unconstitutional.  (Pl. Resp., Doc. 29, at Pg. ID 634).  But Plaintiffs misunderstand the Equal Protection Clause, which "does not forbid classifications.  It simply keeps the governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn,* 505 U.S. 1, 10 (1992) (citation omitted).  And Plaintiffs failed to argue how they are being treated differently than other foster parents.

As explained in Defendant's motion, Doc. 8 at Pg. ID 71-72, because the Plaintiffs are not a suspect class, the rational basis test applies. *Romer v. Evans,* 517 U.S. 620, 631 (1996).  And the Sixth Circuit applies the rational basis test to classifications based on ownership or possession of firearms. *Peoples Rights,* 152

F.3d at 531.  Although they cited *Peoples Rights* twice in their Response Brief, misapplying its holdings on standing and ripeness, they apparently overlooked its application of the rational basis test to an equal protection claim based on firearm possession.  (Pl. Resp., Doc. 29, at Pg. ID 613, 616.)

And Plaintiffs have failed to explain why the rational basis test does not apply or explain how R. 400.9415 fails to meet that standard.  Instead, Plaintiffs merely assert that their rights are being violated and, therefore, strict scrutiny applies.  To the extent that this Court wants to indulge Plaintiffs' strict scrutiny assertion, R. 400.9415 is narrowly tailored because it only effects the storage of firearms and ammunition in licensed foster care homes.  Further, as Plaintiffs have conceded, the State has a compelling interest in the protection of children, and can regulate the safety of foster care homes.  (Pl. Resp., Doc. 29, at Pgs. ID 622, 626, 635.)

### 3.    Plaintiffs failed to respond to Defendants' argument that 42 U.S.C. § 1981 does not apply.

Section 1981 only applies to discrimination based on race, alienage, ancestry, or ethnic characteristics.  *Ali v. Advance Am. Cash Advance Centers, Inc.,* 110 F. Supp. 3d 754, 757 (E.D. Mich. 2015) (citing *St. Francis College v. Al—Khazraji*, 481 U.S. 604, 613 (1987)).  None of these are applicable in this case, and Plaintiffs' failure to address Defendants' argument in their Response effectively waives or concedes this issue.  *Amway Glob.*, 744 F. Supp. 2d at 669*; Layne*, 192 F.3d at 566–67.

**C. Plaintiffs failed to address the voluntary nature of a foster license.**

Plaintiffs failed to refute Defendant's argument that their participation in the foster care system is voluntary.[5]  Accordingly, they can agree to curtail their rights in exchange for participation in a licensing system because "constitutional freedoms can be contracted away." *Compuware Corp. v. Moody's Inv'rs Servs., Inc.*, 499 F.3d 520, 535 (6th Cir. 2007).

For instance, in *Hall v. Sweet*, the Sixth Circuit held that a daycare licensee who had consented to inspections of her home pursuant to licensing investigations had validly waived her Fourth Amendment right to be free from warrantless searches.  *Hall v. Sweet*, 555 F. App'x 469, 476 (6th Cir. 2016), Doc. 9-15, Pg. ID 341.  Even though the consent was a condition of receiving a child care license, thus directly affecting the plaintiff's livelihood, the Court held "'conditions can lawfully be imposed on the receipt of a benefit—conditions that may include the surrender of a constitutional right.'"  *Id.* at 476 (citing *Burgess v. Lowery*, 201 F.3d 942, 947 (7th Cir. 2000)).  Moreover, the Court held that the state has an "overwhelming justification in ensuring child wellbeing is adequately protected."  *Hall*, 666 F. App'x at 477.  Accordingly, no Fourth Amendment violation occurred.  *Id.*

The Court also addressed the issue of the child care license being conditioned on consent to search and stated that these types of conditions are lawful and reasonable.  *Id.* at 476-77 (citing *Burgess,* 201 F.3d at 947 and *Knox Cty. Educ.*

---

[5] The Johnsons also ignore that placement of a child with a relative requires no foster care license.  Mich. Comp. Laws § 712A.13a(1)(e).

*Ass'n v Knox Cty. Bd. of Educ.,* 158 F.3d 361, 366-67, 384 (6th Cir. 1998)). Consent provisions are reasonable because "the state has an overwhelming justification in ensuring child wellbeing is adequately protected at the locations it licenses for child care." *Hall*, 666 F. App'x at 477.

In the present case, it is uncontested that a foster license is a voluntary contractual relationship with the Department. Indeed, it would be hard to contest that, given the Sixth Circuit has held that a foster license is a temporary relationship created by state law and contract. *Renfro*, 884 F.2d at 944. As such, freedom to contract allows the parties to reasonably waive even constitutional rights. *Tennessee Secondary Sch. Athletic Ass'n v. Brentwood Acad.*, 551 U.S. 291, 299–300 (2007) (private school can contractually waive First Amendment speech freedoms in order to participate in an athletic league); *Garcetti v. Ceballos*, 547 U.S. 410, 418-19 (2006) ("When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom."); *Jones v. U-Haul Co. of Massachusetts & Ohio Inc.*, 16 F. Supp. 3d 922, 941–42 (S.D. Ohio 2014) (party may contractually waive constitutional right to jury trial in favor of arbitration).

## CONCLUSION AND RELIEF REQUESTED

Plaintiffs' Response Brief does not address the arguments discussed in Defendant's Motion to Dismiss and Brief in Support. Plaintiffs fail to confront the case law, do not discuss applicable legal standards, and do not address the plain language of R. 400.9415. Instead, they rely on misinterpretation of the law, hyperbole and speculation, and incorporate allegations not contained in their Complaint. In sum, Plaintiffs fail to address the infirmities of their Complaint. Plaintiffs' claims lack merit, and this Court should dismiss their Complaint.

Respectfully submitted,

Bill Schuette
Attorney General


/s/ Joshua S. Smith
Assistant Attorney General
Attorneys for Defendant
Health, Education & Family
Services Division
P.O. Box 30758
Lansing, MI 48909
Phone: (517) 373-7700
Fax: (517) 335-1152
Smithj46@michigan.gov
P63349

Dated: December 21, 2017

**CERTIFICATE OF SERVICE (E-FILE)**

I hereby certify that on December 21, 2017, I electronically filed the above

document(s) with the Clerk of the Court using the ECF System, which will provide

electronic copies to counsel of record.

A courtesy copy of the aforementioned document will be placed in the mail

directed to:  Judge Paul L. Maloney, 137 Federal Bldg., 410 W. Michigan Avenue,

Kalamazoo, MI 49007.

<div style="margin-left:50%;">

/s/ Joshua S. Smith<br>
Assistant Attorney General<br>
Attorney for Defendant<br>
Health, Education & Family<br>
Services Division<br>
P.O. Box 30758<br>
Lansing, MI  48909<br>
Phone:  (517) 373-7700<br>
Fax:  (517) 335-1152<br>
Smithj46@michigan.gov<br>
P63349

</div>