UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION (2)

WILLIAM JOHNSON, JILL JOHNSON, BRIAN MASON, NAOMI MASON, and SECOND AMENDMENT FOUNDATION, INC.,

    Plaintiffs,

v.

NICK LYON, in his official capacity as Director of the Michigan Department of Health and Human Services,

    Defendant.

No. 17-CV-00124-DLM-TPG

HON. PAUL L. MALONEY

MAG. TIMOTHY P. GREELEY

**DEFENDANT'S SUPPLEMENTAL BRIEF ON THE APPROPRIATE STANDARD OF REVIEW**

---

David G. Sigale
Attorney for Plaintiffs
Law Firm of David G. Sigale, P.C.
799 Roosevelt Road, Suite 207
Glen Ellyn, IL 60137
(630) 452-4547
dsigale@sigalelaw.com

---

Joshua S. Smith (P63349)
Jennifer L. A. Walker (P73048)
Attorneys for Defendant
Michigan Department of Attorney General
Health, Education & Family Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 373-7700
smithj46@michigan.gov
walkerj32@michigan.gov

---/

# DEFENDANT'S SUPPLEMENTAL BRIEF ON THE APPROPRIATE STANDARD OF REVIEW

B. Eric Restuccia
Chief Legal Counsel

/s/ Joshua S. Smith
Assistant Attorney General
Attorneys for Defendant
Health, Education & Family
Services Division
P.O. Box 30758
Lansing, MI 48909
Phone: (517) 373-7700
Fax: (517) 335-1152
Smithj46@michigan.gov
P63349

Dated: June 28, 2018

# TABLE OF CONTENTS

                                                                                                                Page

Table of Contents ................................................................................................... i

Index of Authorities ............................................................................................... ii

Concise Statement of Issues Presented ................................................................. v

Controlling or Most Appropriate Authority .......................................................... v

introduction ........................................................................................................... 1

Argument ............................................................................................................... 2

I.     Intermediate scrutiny applies to Plaintiff's Second Amendment challenge to the Department's safe storage rules for licensed foster homes. .......................... 2

        A.     The case law establishes that intermediate scrutiny applies. .............................. 2

        B.     The context of child safety in a foster care setting mitigates in favor of applying intermediate scrutiny. ...................................................................... 6

II.    The safe storage rule satisfies strict scrutiny. .............................................. 8

Conclusion and Relief Requested ....................................................................... 10

# INDEX OF AUTHORITIES

Page

**Cases**

*Bonidy v. U.S. Postal Serv.*,
 790 F.2d 1121 (10th Cir. 2015) ............................................................................... 3

*Clark v. Martinez*,
 543 U.S. 371 (2005) ................................................................................................ 10

*Ezell v. City of Chicago*,
 651 F.3d 684 (7th Cir. 2011) (*Ezell I*) ..................................................................... 4

*Ezell v. City of Chicago*,
 846 F.3d 888 (7th Cir. 2015) (*Ezell II*) .................................................................... 4

*GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Eng'rs*,
 788 F.3d 1318 (11th Cir. 2015) ............................................................................... 2

*Hall v. Sweet*,
 555 F. App'x 469 (6th Cir. 2016) ............................................................................ 8

*Heller v. District of Columbia*,
 554 U.S. 570 (2008) .......................................................................................... 2, 5, 8

*Heller v. District of Columbia*,
 670 F.3d 1244 (D.C. Cir. 2011) ............................................................................ 2, 7

*Jackson v. City and County of San Francisco*,
 746 F.3d 953 (9th Cir. 2014), cert. den. 135 S. Ct. 2799 (2016) ......................... 5, 6

*Mance v. Sessions*,
 880 F.3d 183 (5th Cir. 2018) .................................................................................. 2

*New York State Rifle & Pistol Ass'n v. Cuomo*,
 804 F.3d 242 (2d Cir. 2015) .................................................................................... 2

*NRA of Am. v. Bureau of Alcohol*,
 700 F.3d 185 (5th Cir. 2012) ................................................................................ 2, 6

*Turaani v. Sessions*, No. 17-14112,
 2018 WL 2740255, *8 (E.D. Mich. 2018) ................................................................ 3

*Tyler v. Hillsdale County Sheriff's Dep't*,
 837 F.3d 678 n. 12 (6th Cir. 2016) ................................................................... passim

*U.S. v. Booker,*
 644 F.3d 12 (1st Cir. 2011) ............................................................................................. 2

*U.S. v. Chovan*,
 735 F.3d 1127 (9th Cir. 2012) ....................................................................................... 2

*U.S. v. Marzzarella*,
 614 F.3d 85 (3d Cir. 2010) ............................................................................................ 2

*U.S. v. Reese*,
 627 F.3d 792 (10th Cir. 2010) ....................................................................................... 2

*United States v. Chester*,
 628 F.3d 673 (4th Cir. 2010) ......................................................................................... 3

*United States v. Emerson,*
 270 F.3d 203 (5th Cir. 2001) ......................................................................................... 6

*United States v. Mahin*,
 668 F.3d 119 (4th Cir. 2012) ......................................................................................... 6

*United States v. Rene E.,*
 583 F.3d 8 (1st Cir. 2009) ............................................................................................. 6

*United States v. Skoien,*
 614 F.3d 638, 641 (7th Cir. 2010) ............................................................................ 2, 8

*Wade v. Univ. of Michigan*,
 320 Mich. App. 1, 15; 905 N.W.2d 439 (2017) ............................................................ 8

*Weinberger v. Salfi*,
 422 U.S. 749 (1975) ...................................................................................................... 4

*Wrenn v. District of Columbia*,
 864 F.3d 650 (D.C. Cir. 2017) ...................................................................................... 2

*Yates v. United States*,
 135 S. Ct. 1074 (2015) .................................................................................................. 9

**Statutes**

18 U.S.C. § 922(x)(2) ........................................................................................................ 6

**Other Authorities**

Mich. Comp. Laws § 28.422 .............................................................................................. 9

Mich. Comp. Laws § 28.422(3) ................................................................................ 6

Mich. Comp. Laws 28.422a ..................................................................................... 9

Mich. Comp. Laws 28.425(b) ................................................................................... 6

Pub. L. No. 90, § 901(a)(2) ...................................................................................... 6

**Rules**

R. 400.9415 .................................................................................................... iv, 7, 9

R. 400.9415(2) ..................................................................................................... 7, 9

R. 400.9415(3) ..................................................................................................... 6, 7

## CONCISE STATEMENT OF ISSUES PRESENTED

1. Intermediate scrutiny applies to Plaintiffs' Second Amendment challenge to the Department's safe storage rules for licensed foster homes.

2. Rule 400.9415 satisfies the strict scrutiny test because it is narrowly tailored to achieve a compelling governmental interest.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

<u>Authority</u>:   *Heller v. District of Columbia*, 554 U.S. 570 (2008); *Tyler v. Hillsdale County Sheriff's Department*, 837 F.3d 678 (6th Cir. 2016); *Jackson v. City and County of San Francisco*, 746 F.3d 953 (9th Cir. 2014).

# INTRODUCTION

Second Amendment cases apply a two-step test. First, courts determine whether a rule impinges on core Second Amendment rights. If not, the inquiry ends and the rule is affirmed. If it does impinge on core Second Amendment rights, courts typically apply the intermediate scrutiny test. At oral argument on Defendant Nick Lyon's Motion to Dismiss, Doc. 7, this Court highlighted that the Sixth Circuit has not foreclosed the application of strict scrutiny to Second Amendment cases, citing to *Tyler v. Hillsdale County Sheriff's Dep't*, 837 F.3d 678, 692 n. 12 (6th Cir. 2016). Accordingly, this Court requested supplemental briefing to help it determine whether intermediate or strict scrutiny applies at the second step of the test.

The case law strongly supports the application of intermediate scrutiny in Second Amendment cases where the governmental rule at issue infringes on the core of the Second Amendment, regardless of whether the plaintiff challenging the rule has been determined to be a law-abiding citizen.

The application of intermediate scrutiny is more compelling in the present case, which involves a temporary storage rule that only applies due to a voluntary contractual relationship with the state – a foster license – in which the state grants licensees the privilege of taking care of children under the custody and control of the state. Moreover, should this Court apply strict scrutiny, Defendant meets that burden.

## ARGUMENT

**I.     Intermediate scrutiny applies to Plaintiff's Second Amendment challenge to the Department's safe storage rules for licensed foster homes.**

**A.     The case law establishes that intermediate scrutiny applies.**

In *Heller v. District of Columbia*, 554 U.S. 570 (2008), the Court reviewed District laws that "totally ban[ned] handgun possession in the home" and required "any lawful firearm in the home to be disassembled or bound by a trigger lock at all times, rendering it inoperable." *Id*. at 628. This effected a total ban on firearms for personal defense. *Heller* found the laws unconstitutional and did not clarify which standard should apply to Second Amendment cases. The only guidance it offered was that rational basis review was inappropriate. *Id*. at n. 27. Thus, the Court left the question of which level of heightened scrutiny applies –intermediate or strict scrutiny – to the circuit courts. Nearly every circuit has applied some form of intermediate scrutiny[1]; none have held that strict scrutiny applies.[2]

In *Tyler v. Hillsdale County Sheriff's Department*, 837 F.3d 678 (6th Cir. 2016), the plaintiff was a law-abiding citizen who had never been convicted of any crime. He had been

---

[1] *Heller v. District of Columbia*, 670 F.3d 1244, 1252-53, 1257-58 (D.C. Cir. 2011); *Tyler v. Hillsdale County Sheriff's Dep't*, 837 F.3d 678, 692 (6th Cir. 2016); *U.S. v. Booker*, 644 F.3d 12, 25 (1st Cir. 2011)(agreeing with the Seventh Circuit in *U.S. v. Skoien*, 614 F.3d 638, 641 (2010), using a "strong showing" standard equating to intermediate scrutiny); *New York State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 257-61 (2d Cir. 2015); *U.S. v. Marzzarella*, 614 F.3d 85, 89, 97-98 (3d Cir. 2010); *NRA of Am. v. Bureau of Alcohol*, 700 F.3d 185, 194, 205-06 (5th Cir. 2012); *U.S. v. Chovan*, 735 F.3d 1127, 1136-38 (9th Cir. 2012); *U.S. v. Reese*, 627 F.3d 792, 800-802 (10th Cir. 2010); *GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Eng'rs*, 788 F.3d 1318, 1324 (11th Cir. 2015) (endorsing two-step test, but not reaching second step). *See also Wrenn v. District of Columbia*, 864 F.3d 650, 666 (D.C. Cir. 2017) (finding ban on concealed carry of firearms categorically unconstitutional and thus not applying any form of heightened scrutiny, but noting that "we've never applied more than intermediate scrutiny.").

[2] The only case that even comes close merely assumed, "without deciding," that strict scrutiny applied. *Mance v. Sessions*, 880 F.3d 183, 188 (5th Cir. 2018).

subject to an involuntary commitment in a psychiatric hospital for two to four weeks in 1986. *Id*. at 683. In 2011, 25 years later, that involuntary commitment prevented him from purchasing a firearm. *Id*. at 684. By the time the Sixth Circuit decided the appeal en banc, it had been over thirty years since the plaintiff's brief commitment. *Id*. at 688.

The Court followed the majority of circuits in applying intermediate scrutiny, even though the restriction was effectively a permanent bar on the possession of "all types of firearms, even in [the] home." *Id*. at 691. But, the Court reasoned, the permanency of the restriction did not require the application of strict scrutiny. In part, this was because the inherent risk involved with firearms set the Second Amendment apart from other fundamental rights. *Id*., citing *Bonidy v. U.S. Postal Serv.*, 790 F.2d 1121, 1126 (10th Cir. 2015); *see also Turaani v. Sessions*, No. 17-14112, 2018 WL 2740255, *8 (E.D. Mich. 2018), Ex. 1. Indeed, the Court warned against "imposing too high a burden on the government to justify its gun safety regulations." *Tyler*, 837 F.3d at 691.

In a single footnote, the Court noted that it was not completely foreclosing the application of strict scrutiny:

> We do not suggest that strict scrutiny will never be applicable in a Second Amendment challenge to a gun regulation. As the Fourth Circuit noted, "[t]he Second Amendment is no more susceptible to a one-size-fits-all standard of review than any other constitutional right."

*Tyler*, 837 F.3d 692, n. 12, citing *United States v. Chester*, 628 F.3d 673, 682 (4th Cir. 2010) (internal citation omitted).

Although the Court articulated no standard for determining when strict scrutiny applies, it did find that whether a ban is temporary or permanent factors into whether it passes intermediate scrutiny. *Id*. at 697. Temporary bans more easily pass muster than permanent bans. Moreover, "in the context of gun safety, 'the expense and other difficulties of individual determinations'

3

may necessitate 'the inherent imprecision of a prophylactic rule.'" *Id*. at 698, citing *Weinberger v. Salfi*, 422 U.S. 749, 777 (1975). As noted by *Tyler*, most circuit courts have reached a consensus that intermediate scrutiny applies to Second Amendment cases. Even *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) (*Ezell I*), the primary circuit court case on which Plaintiffs rely, concluded that intermediate scrutiny applies.

In *Ezell I*, the Court reviewed a set of Chicago laws that all but precluded individuals from having operable firearms in their homes. Chicago banned handgun possession outside the home and the possession of long guns outside the home or the owner's "fixed place of business." *Id*. at 690. Furthermore, a home could have "'no more than one firearm in [the] home assembled and operable.'" *Id*. at 690-91 (internal citation omitted). Chicago also required all firearms to have registration and all owners to have valid permits. *Id*. at 691. Permits were "conditioned upon completion of a certified firearm-safety course." *Id*. But Chicago also de facto banned the types of firearm ranges that offered the necessary safety courses, putting people who desired to defend their homes and their person with firearms in an untenable Catch-22 situation. *Id*.

Yet, despite this effective ban on firearms and shooting ranges in Chicago, the Seventh Circuit still did not apply strict scrutiny. Instead, it applied "a more rigorous showing than [intermediate scrutiny] . . . if not quite 'strict scrutiny.'" *Id*. at 708.

The Seventh Circuit revisited the issued four years later in *Ezell II*. Following *Ezell I*, Chicago revised its firearms ordinance. *Ezell v. City of Chicago*, 846 F.3d 888, 891 (7th Cir. 2015) (*Ezell II*). The Court noted that it applied "a strong form of intermediate scrutiny" in *Ezell I. Ezell II*, 846 F.3d at 893. The Court also found that most other circuits also applied intermediate scrutiny. *Id*. (Third, Fourth, Fifth, Sixth, Ninth and Tenth Circuits apply intermediate scrutiny to the Second Amendment).

4

But neither the permanent ban of *Tyler* nor the near-total ban of *Ezell* precisely comports with the safe-storage requirements at issue. The Ninth Circuit decision in *Jackson v. City and County of San Francisco*, 746 F.3d 953, 966 (9th Cir. 2014), cert. den. 135 S. Ct. 2799 (2016), more closely parallels the present case. The Court reviewed an ordinance prohibiting a handgun in a residence unless it was "'stored in a locked container or disabled with a[n approved] trigger lock'" or "'carried on the person of an individual over the age of eighteen.'" *Jackson*, 746 F.3d at 958 (internal citations omitted). It also banned "'hollow point'" bullets. *Id*. Several plaintiffs challenged the ordinance, alleging that it violated the Second Amendment. *Id*.

The ordinance "require[d] San Franciscans to choose, while in their homes, between carrying a handgun on their person and storing it in a locked container or with a trigger lock." *Id*. at 963. And because it is impractical to carry a gun at all times, "such as when sleeping or bathing," it required handguns to sometimes be stored in a locked container or with a trigger lock. *Id*. at 963-64.

Despite these considerable restrictions, the Court held that the intermediate scrutiny test applied. *Id*. at 965. A significant factor was that, unlike *Heller*, the ordinance did not prevent lawful citizens from defending themselves with firearms. *Id*. at 964. Instead, it left open "alternative channels to self-defense in the home" because people could carry the firearm "on their person." *Id*.

Although "the risk of gun-related injury . . . to children" comprised a significant interest, the Court rejected the contention that the ordinance was overly broad because it applied regardless of whether there were any children present in the home. *Id*. In addition, the Court held that the burden imposed was minimal "because it causes a delay of only a few seconds

while the firearm is unlocked or retrieved from storage." *Id*. The ordinance therefore satisfied the intermediate scrutiny test.

The ordinance at issue in *Jackson* was far more intrusive than R. 400.9415(3). In the first instance, it applied to *all* handguns in *all* residences in San Francisco. Although child safety comprised one of the significant governmental interests at stake, the ordinance applied whether children were in the residence or not. R. 400.9415(3), however, is focused *solely* on licensed foster homes, not all residences. Additionally, Plaintiffs have no legal obligation to seek out a foster care license. Thus, R. 400.9415(3) fits very closely with the significant interest of protecting children from injury or death from unsecured firearms and satisfies the intermediate – or even strict – scrutiny test. And the temporary nature of the requirements of R. 400.9415(3) means that they are not just a good fit but are narrowly tailored to achieve the important governmental interest of protecting children. *United States v. Mahin*, 668 F.3d 119, 125 (4th Cir. 2012); *NRA of Am. v. Bureau of Alcohol*, 700 F.3d 185, 207 (5th Cir. 2012).

**B.      The context of child safety in a foster care setting mitigates in favor of applying intermediate scrutiny.**

This nation has a long history of restricting access to firearms through age and safe storage laws. *NRA*, 700 F.3d at 203. Historically, laws limiting minors from possessing firearms for public safety purposes are consistent with the Second Amendment. *United States v. Rene E.*, 583 F.3d 8, 15 (1st Cir. 2009); *NRA,* 700 F.3d at 201, 203-04; *see also United States v. Emerson*, 270 F.3d 203, 261 (5th Cir. 2001). Throughout the 19th and 20th centuries, states enacted laws to keep firearms out of the hands of children. *NRA,* 700 F.3d at 202; *see also*, preamble of Pub. L. No. 90-351, § 901(a)(2). Today, both Michigan and Federal law prohibit minors from possessing firearms. Mich. Comp. Laws §§ 28.422(3), 28.425(b); 18 U.S.C. § 922(x)(2).

Consistent with these longstanding firearm safety laws, R. 400.9415 serves to prevent minors from obtaining firearms by requiring them "to be stored securely and out of the reach of children, as appropriate for the age and functioning level of the children." R. 400.9415(2).

Moreover, this rule is not an absolute ban on firearms, but a safe storage rule to keep guns away from children when not in use. Additionally, the safe storage rule applies only to a voluntary contract foster parents have with the state, when foster children are present in the foster home. Laws cannot be invalidated just because they regulate storage to protect children. "Nothing about those fire-safety laws undermines our analysis; they do not remotely burden the right of self-defense as much as an absolute ban on handguns. Nor, correspondingly, does our analysis suggest the invalidity of laws regulating the storage of firearms to prevent accidents." *Heller*, 554 U.S. at 632.

Indeed, the Department promulgated R. 400.9415(3) to minimize risk to foster children. (Def. Br. Supp. Mot. Dismiss, Doc. 9-20, at Pg. ID 372-73, Ex. 19.) It is uncontested that foster children are the most vulnerable and traumatized population in Michigan. Firearm safety is a compelling interest, not just for the 13,000 children in foster care every year that have been abused or neglected, but for all children. Numerous children die every year from unintentional injuries caused by firearms.

Because this regulation is a longstanding rule – in place for nearly two decades – to protect foster care children, intermediate scrutiny should apply. "[A] regulation that is 'longstanding' which necessarily means it has long been accepted by the public, is not likely to burden a constitutional right; concomitantly the activities covered by a longstanding regulation are presumptively not protected from regulation by the Second Amendment." *Heller v. District of Columbia*, 670 F.3d 1244, 1253 (D.C. Cir. 2011). Laws need not have been in place since 1791

to be considered longstanding. *Id.*; *United States v. Skoien,* 614 F.3d 638, 641 (7th Cir. 2010). At a minimum, firearm safety laws protecting children have been in place since the 19th Century.

Furthermore, the Johnsons' home serves a dual purpose – it is their personal residence, and a residence for state wards, used to carry out the terms of a voluntary licensing contract the Johnsons have with the State. When the Johnsons entered into this contract, they voluntarily waived their constitutional rights in order to receive the benefit of a foster care license. (Def. Br. Supp. Mot. Dismiss, Doc. 9-10, at Pg. ID 308, Ex. 9); *see also Hall v. Sweet*, 555 F. App'x 469, 476 (6th Cir. 2016), Doc. 9-15, Pg. ID 341. Like a state-funded university that simultaneously serves as a place of learning and residence for young *adults*, the Johnsons' home is a sensitive location because foster children live there. *Wade v. Univ. of Michigan*, 320 Mich. App. 1, 15; 905 N.W.2d 439, 445 (2017) (upholding University of Michigan ordinance banning firearms on all University property because it was a sensitive place to which the Second Amendment did not extend.)[3] And complete prohibitions of firearms in sensitive places does not infringe on the Second Amendment. *Heller,* 554 U.S. at 626-27. But unlike typical universities, there is not a complete firearm ban in Michigan foster homes.

## II. The safe storage rule satisfies strict scrutiny.

To the extent that this Court applies strict scrutiny, R. 400.9415 satisfies that standard because it serves a compelling governmental interest and is narrowly tailored to achieve that interests. Because Plaintiffs concede that Defendant has a compelling interest in the protection

---

[3] In 1828, the definitions of "school" included "universities." Webster's Dictionary 1828 Online Edition, , http://www.webstersdictionary1828.com/Dictionary/school (accessed June 21, 2018). Thus, even a 19th century interpretation of schools would be inclusive of universities, which as sensitive locations, do not have Second Amendment protections. *Wade v. Univ. of Michigan*, 320 Mich. App. 1, 14–15; 905 N.W.2d 439, 445 (2017).

8

of foster children, only the second step of the two-part test is at issue. (Pl. Resp., Doc. 29, at Pg. ID 622, 626.)

The plain language of R. 400.9415 provides that, in a licensed foster home, firearms must be stored in a locked metal or solid wood gun safe. R. 400.9415(3)(a). Alternatively, firearms may be stored outside of a safe if they are unloaded and have trigger locks. *Id*. at § (3)(b). Ammunition must be stored in a separate, locked location. *Id*. at § (3)(c). Handguns must comport with Michigan's registration requirements. *Id*. at § (3)(d); Mich. Comp. Laws §§ 28.422; 28.422a. Nothing in the language of R. 400.9415(3) prevents licensed foster parents from bearing operable firearms for any purpose. Instead, they must establish safe-storage practices for guns and ammunition when not in use or on the person.

Moreover, the language surrounding § 3 clearly pertains to *storage*. The preceding section, R. 400.9415(2), refers expressly to storage – "shall be stored securely and out of the reach of children," placing the rule firmly in the context of storage under *noscitur a sociis*. *Yates v. United States*, 135 S. Ct. 1074, 1085-87 (2015). Although foster parents must safely store dangerous household chemicals, like bleach, this in no way precludes them from using such chemicals. R. 400.9415(2). Similarly, nothing in R. 400.9415(3) prohibits foster parents from bearing, carrying, or using firearms. The text of the rule merely requires that firearms and ammunition be safely stored when not in use.

The notion, advanced by Plaintiffs' counsel at oral argument, that the rule must affirmatively inform foster parents of what they can do fails because rules exist to let people know what conduct is proscribed, not what conduct is allowed. Accordingly, R. 400.9415(3) does not need to inform licensed foster parents that they can bear arms any more than R. 400.9415(2) needs to inform them that they can use bleach on their laundry. In any case, to the

9

extent that the provision is unclear, this Court should reject Plaintiffs' interpretation to avoid finding the rule unconstitutional. *Clark v. Martinez*, 543 U.S. 371, 381-82, 385 (2005) (where statute susceptible to more than one meaning, courts should choose that which avoids finding it unconstitutional).

## CONCLUSION AND RELIEF REQUESTED

The case law strongly established that intermediate scrutiny applies to Second Amendment cases where the governmental rule at issue infringes on the core of the Second Amendment, regardless of whether the plaintiff challenging the rule has been determined to be a law-abiding citizen. The application of intermediate scrutiny is more compelling in the present case, which involves a temporary storage rule that only applies due to a voluntary contractual relationship with the state – a foster license – in which the state grants licensees the privilege of taking care of children under the custody and control of the state. Moreover, should this Court apply strict scrutiny, Defendant meets that burden.

Respectfully submitted,

B. Eric Restuccia
Chief Legal Counsel

/s/ Joshua S. Smith
Assistant Attorney General
Attorneys for Defendant
Health, Education & Family
Services Division
P.O. Box 30758
Lansing, MI 48909
Phone: (517) 373-7700
Fax: (517) 335-1152
Smithj46@michigan.gov
P63349

Dated: June 28, 2018

**CERTIFICATE OF SERVICE (E-FILE)**

I hereby certify that on June 28, 2018, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

A courtesy copy of the aforementioned document will be placed in the mail directed to: Judge Paul L. Maloney, 137 Federal Bldg., 410 W. Michigan Avenue, Kalamazoo, MI 49007.

/s/ Joshua S. Smith
Assistant Attorney General
Attorney for Defendant
Health, Education & Family
Services Division
P.O. Box 30758
Lansing, MI  48909
Phone:  (517) 373-7700
Fax:  (517) 335-1152
Smithj46@michigan.gov
P63349