IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| WILLIAM JOHNSON, JILL JOHNSON, BRIAN MASON, NAOMI MASON, and SECOND AMENDMENT FOUNDATION, INC., <br><br> Plaintiffs, <br><br> v. <br><br> NICK LYON, in his official capacity as Director of the Michigan Department of Health and Human Services, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) No. 2:17-CV-124-PLM-TPG <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S SUPPLEMENTAL BRIEF ON THE APPROPRIATE STANDARD OF REVIEW

NOW COME the Plaintiffs, WILLIAM JOHNSON, JILL JOHNSON, BRIAN MASON, NAOMI MASON, and SECOND AMENDMENT FOUNDATION, INC., by and through LAW FIRM OF DAVID G. SIGALE, P.C., their attorney, and submit their Response to the *Defendants' Supplemental Brief on the Appropriate Standard of Review*.

Dated: July 20, 2018  Respectfully submitted,

By:    /s/ David G. Sigale
              Attorney for Plaintiffs

David G. Sigale (Atty. ID# 6238103 (IL))
LAW FIRM OF DAVID G. SIGALE, P.C.
799 Roosevelt Road, Suite 207
Glen Ellyn, IL 60137
Tel: 630.452.4547
Fax: 630.596.4445
dsigale@sigalelaw.com

i

## CONCISE STATEMENT OF ISSUE PRESENTED

Which level of heightened scrutiny (strict, near-strict, intermediate) should the Court apply when analyzing whether Defendant's Foster Care Rule 400.9415, which prohibits Plaintiffs and other similarly-situated persons who participate in Michigan's foster care system from bearing arms for lawful purposes including self-defense and defense of others, unconstitutionally infringes on the Plaintiffs' Second Amendment rights?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011)

*Jackson v. City & County of San Francisco*, 746 F.3d 953 (9th Cir. 2014)

*Tyler v. Hillsdale Cnty. Sheriff's Dep't*, 837 F.3d 678 (6th Cir. 2016)

# PLAINTIFFS' RESPONSE TO DEFENDANT'S SUPPLEMENTAL BRIEF ON THE APPROPRIATE STANDARD OF REVIEW

## INTRODUCTION

So as not to repeat themselves to the Court, Plaintiffs incorporate their arguments on these relevant issues contained in Dkt. #29, as well as those articulated during oral argument on June 7, 2018, as if fully restated herein.

As to the standard of scrutiny issue, however, as R. 400.9415 denies Plaintiffs the ability to defend themselves and their families, both in a vacuum and as compared to other types of parents in the State, strict or near-strict scrutiny is appropriate for evaluating Plaintiffs' Second Amendment claims. Plaintiffs note, however, that for reasons previously stated, R. 400.9415 fails under intermediate scrutiny as well.

Further, since the Court has stated it is treating the current proceedings solely as an F.R.Civ.P. 12(b)(6) Motion to Dismiss, under the Second Amendment to the United States Constitution, *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. City of Chicago*, 130 S.Ct. 3010 (2010), Plaintiffs have stated a valid claim, and Defendant's Motion to Dismiss should be denied.

## THE APPROPRIATE STANDARD OF SCRUTINY FOR PLAINTIFFS' SECOND AMENDMENT CLAIM IS STRICT OR NEAR-STRICT SCRUTINY.

*Heller* held that the Second Amendment "surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." 554 U.S. at 635. "A statute . . . which requires arms to be so

borne as to render them wholly useless for the purpose of defence, would be clearly unconstitutional." *Id.* at 629, quoting *State v. Reid*, 1 Ala. 612, 616-617 (1840).

Once it is established that Second Amendment rights are implicated, and it cannot be argued otherwise, "then [the Court] must ascertain the appropriate level of scrutiny and examine the 'strength of the government's justification for restricting or regulating the exercise of Second Amendment rights.'" *Tyler v. Hillsdale Cnty. Sheriff's Dep't*, 837 F.3d 678, 686 (6th Cir. 2016) (quoting *Ezell v. City of Chicago*, 651 F.3d 684, 703 (7th Cir. 2011).

"Given *Heller's* focus on 'core' Second Amendment activity, [the Court's] choice of scrutiny level should be informed by '(1) 'how close the law comes to the core of the Second Amendment right,' and (2) 'the severity of the law's burden on the right.'" *Tyler*, 837 F.3d at 690 (quoting *Ezell*, 651 F.3d at 703).

As in *Ezell*, Plaintiffs are the law-abiding responsible citizens who have full Second Amendment rights under *Heller*. 651 F.3d at 708. Banning functional firearms from home use clearly implicates Second Amendment rights (*See Heller*, 554 U.S. at 636). Because the Defendant's rules and policies strike at the core of the Second Amendment right (*Id.* at 630), strict scrutiny applies.

The Sixth Circuit in *Tyler* applied intermediate scrutiny to the question of Second Amendment rights for those previously adjudicated mentally ill, but specifically noted "[t]he animating interest of § 922(g) 'was to keep firearms out of the hands of presumptively risky people.' *Tyler*, 837 F.3d at 693 (quoting *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 112 n.6 (1983)). *See also Huddleston v.*

2

*United States*, 415 U.S. 814, 824 (1974) ("The principal purpose of the federal gun control legislation . . . was to curb crime by keeping 'firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency'"). Indeed, the *Tyler* Court noted it was applying intermediate scrutiny because: "[l]ike the other provisions of § 922(g), § 922(g)(4) does not burden the public at large; it burdens only a narrow class of individuals who are not at the core of the Second Amendment —those previously adjudicated mentally defective or previously involuntarily committed." *Tyler*, 837 F.3d at 691 (*See also United States v. Reese*, 627 F.3d 792, 802 (10th Cir. 2010) (applying intermediate scrutiny to § 922(g)(8) in part because the "statute[] prohibit[s] the possession of firearms by [a] narrow class[] of persons who, based on their past behavior, are more likely to engage in domestic violence").

In *Heller v. District of Columbia*, 670 F.3d 1244 (D.C. Cir. 2011) (*Heller II*), the D.C. Circuit applied intermediate scrutiny to analyzing a number of firearm registration laws because "none of the District's registration requirements prevents an individual from possessing a firearm in his home or elsewhere, whether for self-defense or hunting, or any other lawful purpose." *Id.* at 1258. That situation clearly does not exist in this case.

Similarly, in *Turaani v. Sessions*, 2018 U.S. Dist. LEXIS 95804 (E.D.Mich. 2018), the Court applied intermediate scrutiny when analyzing a Second Amendment claim involving a three-day waiting period for purchasing a firearm. Specifically, the Court held the wait "barely burdens" the right. *Id.* at *22.

3

While intermediate scrutiny may or may not be appropriate for evaluating minimal burdens or the various firearms restrictions under 18 U.S.C. § 922(g), none of that is applicable to this case. However, it demonstrates a clear delineation between those stripped of firearm rights for various offenses that leave them outside of the Second Amendment's protection, and the law-abiding persons who are protected by the Second Amendment, and thus have their claims analyzed under strict or near-strict scrutiny, such as in *Ezell*. It also displays the difference between the minimal burdens such as in *Turaani* and the complete prohibition on foster parents possessing functional firearms that exists in this case.

Even in *Jackson v. City & County of San Francisco*, 746 F.3d 953 (9th Cir. 2014), the Court only applied intermediate scrutiny because:

> even when a handgun is secured, it may be readily accessed in case of an emergency. Further, section 4512 leaves open alternative channels for self-defense in the home, because San Franciscans are not required to secure their handguns while carrying them on their person. Provided San Franciscans comply with the storage requirements, *they are free to use handguns to defend their home while carrying them on their person*. Thus, Section 4512 does not impose the sort of severe burden that requires the higher level of scrutiny applied by other courts in this context."

*Id.* at 964.

Because that crucial factor is missing in this case, the challenged regulations much more effectively prohibit functional firearm possession by foster parents and therefore destroy the Second Amendment right altogether. *Jackson* demonstrates why strict or near-strict scrutiny is appropriate.

4

## The challenged Rule cannot survive strict scrutiny.

Though the Court is only considering an F.R.Civ.P. 12(b)(6) Motion at this stage, and while Plaintiffs intend to fully engage in the discovery process, Plaintiffs respond here to the corresponding argument raised in Defendant's supplemental brief.

Once strict scrutiny is employed, the Defendant's Rule 400.9415 can only be held unconstitutional. Indeed, the fundamental right of self-defense is severely restricted by the Rule, as a locked-away firearm with no readily-available ammunition is of little help to someone in a self-defense situation.

Again, Plaintiffs agree the State has a compelling interest in public safety, including/especially that of children. Plaintiffs share those interests. However, the Rule's restrictions infringe on the core of the Second Amendment right as stated in *Heller*, and the challenged Rule is not narrowly tailored to achieve those interests.

Defendant continues to claim the Rule is nothing but a safe storage law, but the Rule's plain language forbids the carry of firearms (regardless of whether foster children are present or not) and forbids having readily-available functional firearms in the home, even on one's person, for self-defense purposes. Defendant repeats the unsubstantiated (and false) assertion that the Rule does not prohibit a foster parent from carrying a firearm on his person, but the Rule does not state this. The Rule requires any firearms to be unloaded, locked away, inaccessible, outfitted with trigger locks, and separate from the also locked-up ammunition. It would have been simple for the drafters to write "Unless carried on one's person . . .," but they did

5

not. And this argument does not even address the prohibitions on loaded firearms in a locked safe, which would afford actual protection in the event of a break-in, for example. Therefore, it is clear the Second Amendment right has been destroyed in foster homes.

Defendant also repeats the spurious claim that a foster home is a sensitive place such that firearms could be prohibited in them. *Heller* gave the examples of schools and government buildings as "sensitive places," *Heller*, 554 U.S. at 626, while specifically holding that "handguns are the most popular weapon chosen by Americans for self-defense in the home, and a complete prohibition of their use is invalid." *Id.* at 629.

*Wade v. Sweet*, 666 Fed. App'x. 469, 476 (6th Cir. 2016) is completely inapposite. Even if *reasonable* conditions, even the forced waiver of a constitutional right, can be imposed by the Defendant, the prohibitions imposed by Rule 400.9415 are *not* reasonable. In *Wade*, the issue was inspections of group homes, something with which Plaintiffs make no complaint. The complete prohibition of the Second Amendment right, however, is another story.

Likewise, the University of Michigan is not the Plaintiffs' Ontonagan home, which is why the comparison to *Wade v. University of Michigan*, 905 N.W.2d 439 (Mich. App. 2017), which considered whether a "university" was equivalent to a "school," is so inapt.

In fact, the *Wade* Court distinguished itself from the situation here:

> [T]he *Heller* Court held that the Second Amendment precludes the "absolute prohibition of handguns held and used for self

6

> defense in the home." *Id.* at 636. And with regard to the District's requirement that firearms in the home be kept inoperable, the *Heller* Court stated, "This makes it impossible for citizens to use them for the core lawful purpose of self-defense and is hence unconstitutional." *Id.* at 630.

*Wade*, 905 N.W.2d at 444.

The above is why, even if the infringements are analyzed under intermediate scrutiny, the Rule will not be found to be a reasonable fit of an acknowledged substantial/important interest. By prohibiting all possession of functional firearms in foster homes by persons who are law-abiding and already thoroughly vetted, the Rule is decidedly unreasonable.

Again, this case is not about allowing foster children unsecured firearms. Instead, this case is about the honest ability to armed self-defense measures, such as the right to carry a firearm on one's person or in one's vehicle. It is about the right to keep a loaded firearm by one's bed in case of attack, even if that firearm is stored in a gun safe.

Therefore, the Defendant's Motion to Dismiss should be denied.

## CONCLUSION

WHEREFORE, the Plaintiffs, WILLIAM JOHNSON, JILL JOHNSON, BRIAN MASON, NAOMI MASON, and SECOND AMENDMENT FOUNDATION, INC., requests this Honorable Court to deny the Defendant's Motion to Dismiss in its entirety, and for any and all further relief as this court deems appropriate.

Dated: July 20, 2018　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　/s/ David G. Sigale
　　　　　　　　　　　　　　　　　　　　Attorney for Plaintiffs

David G. Sigale (Atty. ID# 6238103 (IL))
LAW FIRM OF DAVID G. SIGALE, P.C.
799 Roosevelt Road, Suite 207
Glen Ellyn, IL 60137
630.452.4547
dsigale@sigalelaw.com

## CERTIFICATE OF ATTORNEY AND NOTICE OF ELECTRONIC FILING

The undersigned certifies that:

1. On July 20, 2018, the foregoing document was electronically filed with the District Court Clerk *via* CM/ECF filing system;

2. Pursuant to F.R.Civ.P. 5, the undersigned certifies that, to his best information and belief, there are no non-CM/ECF participants in this matter.

                                            /s/ David G. Sigale
                                              Attorney for Plaintiffs

David G. Sigale (Atty. ID# 6238103 (IL))
LAW FIRM OF DAVID G. SIGALE, P.C.
799 Roosevelt Road, Suite 207
Glen Ellyn, IL 60137
Tel: 630.452.4547
Fax: 630.596.4445
dsigale@sigalelaw.com